[No. 9478.  Department Two.  October 3, 1911.]

J. F. BLEAKLEY, *Appellant* v. LAKE WASHINGTON MILL COMPANY, *Respondent.*[1]

PUBLIC LANDS — TIDE LANDS — PATENT — BOUNDARIES — MEANDER LINE—PREFERENCE RIGHT TO PURCHASE—ABUTTING TIDE LANDS.  A patent from the government prior to the adoption of the state constitution passed title to tide lands included within the government meander line, where the line was run below high water mark, in view of the constitutional disclaimer of title to tide lands patented by the government, Const., art. 17, § 2; and hence the owner of such lands is entitled, regardless of the location of high water mark, to the preference right to purchase tide lands abutting thereon, conferred by Rem. & Bal. Code, § 6750 upon the owner of lands abutting or fronting upon tide or shore lands of the first class, to the exclusion of one owning the uplands above or abutting on high water mark.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 28, 1910, upon findings in favor of the defendant, upon appeal from an award of the state board of land commissioners, in a contest over the preference right to purchase shore lands.  Affirmed.

*Kerr & McCord*, for appellant.

*McElroy & Booth*, for respondent.

[1]Reported in 118 Pac. 5.

CROW, J.—The question involved in this action is whether J. F. Bleakley or Lake Washington Mill Company, a corporation, is, under Rem. & Bal. Code, § 6750, entitled to the preference right to purchase lots 2, 3, 4 and 5, in block 58, Lake Washington shore lands. In April, 1908, the board of state land commissioners filed their plat of shore lands of the first class along that side of Lake Washington next to the city of Seattle, and in 1909 filed their final appraisal and offered the shore lands for sale. On April 11, 1908, J. F. Bleakley as owner of lots 10, 11 and 12, in block 57, of Burke's second addition to Seattle, which he alleged were the uplands immediately contiguous to the shore lands, made and filed with the commissioner of public lands his written application No. 746 to purchase the shore lands above described. The Lake Washington Mill Company as owner of lots 2, 3, 4 and 5, in block 78, Burke's second addition to Seattle, had theretofore made a like written application No. 732 to purchase the same shore lands. The following plat shows the relative locations of the lots owned by each applicant, the shore lands, the high water line, the government meander line, and Lake avenue lying between block 57 of Burke's addition on the west, and block 78 of the same addition on the east.

The board of state land commissioners rejected the application of Bleakley and awarded the preference right to Washington Mill Company. Upon an appeal to the superior court of King county, the decree of the board was affirmed, and Bleakley now prosecutes this appeal from the judgment of the superior court.

There is but little dispute as to the material facts. In the superior court appellant contended the line of high water was located between the center of Lake avenue and his lots in block 57, while respondent contended it was nearer its lots in block 78, as shown on the above plat, taken from the office of the state land commissioners and made a part of the record by stipulation. We have ourselves caused to be inserted in the plat a dotted line A B, which, although not entirely accurate, approximately indicates and illustrates the location of the high water line for which appellant contends. We regard the question of correct location of this line as immaterial. It is somewhere in Lake avenue between appellant's lots upon the west and respondent's lots upon the east. Whether the true location be as contended by appellant or by respondent, it will be noticed that appellant's lots in block 57 are entirely above the line of high water, and respondent's are below that line, but above the meander line. In other words, respondent owns lots in block 78 of Burke's second addition, located between appellant's lots in block 57 of the same addition on the west, and the Lake Washington shore land lots in block 58 on the east, and also located between the line of high water on the west and the government meander line on the east. The trial court made the following findings, which we approve and adopt:

"(1)  That the Lake Washington Mill Company is the owner in fee of lots 1 to 5 inclusive, block 78, Burke's second addition to the city of Seattle, county of King, state of Washington; that said lots are situated above the meander line and are a part of the land included within the United States patent issued to William H. Patterson in May, 1869;

that thereafter said land, by mesne conveyances, passed to Thomas Burke and wife, who, on March 31st, 1883, platted the same as a part of Burke's second addition to the city of Seattle; that thereafter, through mesne conveyances, said lots passed to William H. Llewellyn on December 31st, 1885; that the next succeeding conveyance of lots was by deed from William H. Llewellyn to J. Sam Brown, dated November 26th, 1888, and that the Lake Washington Mill Company derived its title thereto from J. Sam Brown, and at all times since then has been the owner thereof.

"(2)    That J. F. Bleakley is the owner in fee of lots 10, 11 and 12, block 57, Burke's second addition to city of Seattle, county of King, state of Washington; that said lots 10, 11 and 12 passed from Thomas Burke and wife to William H. Llewellyn on December 31st, 1885, through the same mesne conveyances as did said lots 1 to 5 inclusive, block 78, described in paragraph 1; that on August 25th, 1888, William H. Llewellyn conveyed to Benjamin MacCready said lots 10, 11 and 12, and said J. F. Bleakley derived his title thereto through said Benjamin MacCready, and said lots 10, 11 and 12 constitute the only upland fronting, *but not abutting*, block 58, Lake Washington shore lands.

"(3)    That all of said conveyances mentioned in said paragraphs 1 and 2 were made with reference solely to that certain plat of Burke's second addition to the city of Seattle, which said plat was filed, according to law, on or about March 30th, 1883.

"(4)    That Lake avenue is a street duly dedicated to the city, and was so dedicated at the time of the filing of the above mentioned plat, and that said avenue lies between block 57 and 78 of Burke's second addition to the city of Seattle.

"(5)    That the defendant, Lake Washington Mill Company, by reason of being the owner of lots 2, 3, 4 and 5, block 78, Burke's second addition to the city of Seattle, which is patented land abutting and fronting upon the following described Lake Washington shore lands: lots 2, 3, 4 and 5, block 58, of said Lake Washington shore lands of the first class, as shown by the official plat thereof, now on file in the office of the board of state land commissioners, and under and by virtue of its said application No. 732,

heretofore filed with the board of state land commissioners, and now a part of the record on appeal in this court, is entitled to the preference right to purchase said lots 2, 3, 4 and 5, block 58, Lake Washington shore lands.

"(6)    That said J. F. Bleakley has no right, claim, interest or estate in and to the said lots 2, 3, 4 and 5, block 58, of said Lake Washington shore lands."

Laws of 1897, p. 250, ch. 89, § 45 (Rem. & Bal. Code, § 6750), reads as follows:

"The owner or owners of lands abutting or fronting upon tide or shore lands of the first class shall have the right for sixty (60) days following the filing of the final appraisal of the tide and shore lands with the commissioner of public lands to apply for the purchase of all or any part of the tide or shore lands in front of the lands so owned."

Appellant and respondent each claim the preference right as owners of lots abutting or fronting upon the shore lands. There is no question but that respondent's lots do abut and front on the shore lands. Appellant's lots do not abut thereon. Appellant, however, contends respondent's lots, being entirely below the high water line, are not uplands; that appellant's lots are uplands, and the only uplands abutting *or fronting* upon the shore lands; that the words "land abutting or fronting upon tide or shore lands" refers to uplands only; that the word "upland" as subsequently used in the same section (6750), in Rem. & Bal. Code, § 6754, and as apparently defined by this court in *Denny v. Northern Pac. R. Co.*, 19 Wash. 298, 53 Pac. 341, support this contention; that respondent not being an owner of uplands, is not entitled to the preference right, but that appellant is so entitled. After a careful consideration of the *Denny* case, the statutes cited, and other cases and statutes hereinafter mentioned, we are unable to sustain appellant's contentions.

In the *Denny* case we said:

"And again, the preference right of purchase is by the statute conferred upon 'the owner or owners of lands abut-

ting or fronting upon or bounded by the shore of the Pacific ocean or any bay, harbor, sound,' etc.; in other words, the upland owner. As already stated, the gore strip is not upland. It does not front upon the shore and were we to conclude that the appellant owned the gore strip it would not follow that it is entitled to the preference right to purchase these tide lands. As already shown, Yesler conveyed the upland to these respondents, and in its natural condition the gore strip was merely tide or shore land over and across which the tide ebbed and flowed. No possible construction of the statute would admit of the right of the owner of a piece of tide land to be preferred as a purchaser of abutting tide land."

This language, clearly obiter, was unnecessary to the decision. Moreover, it appears to have involved the construction of Laws 1890, p. 435, § 11, which reads as follows:

"Sec. 11. The owner or owners of any lands abutting, or fronting upon, or bounded by the shore of the Pacific ocean, or of any bay, harbor, sound, inlet, lake or watercourse shall have the right for sixty (60) days following the filing of the final appraisal of the tide-lands to purchase all or any part of the tide-lands in front of the lands so owned."

On March 26, 1895, another act, chapter 178, Laws 1895, relating to public lands of the state, was approved, with an emergency clause, and took immediate effect, § 58 of which, at page 552, reads as follows:

"The owner or owners of lands abutting or fronting upon the lands of the first class shall have the right for sixty (60) days following the filing of the final appraisal of the tide lands with the commissioner of public lands, to apply for the purchase of all or any part of the tide lands in front of the lands so owned."

The applications under consideration in the *Denny* case, as shown by the records therein, were made and filed on April 15, 1895, after the last named act took effect. A marked distinction will be noticed between § 11 of the act of 1890, and § 58 of the later act of 1895. The former

awarded the preference right to the owner or owners of lands abutting or fronting upon or bounded by the *shore* of the Pacific ocean or any lake, and was unquestionably the statute considered by the writer of the opinion in the *Denny* case when he in effect expressed his views that uplands only were thereby indicated. The later act of 1895 awarded the preference right to the owner of land abutting or fronting upon lands of the first class, and this language was substantially reenacted in Laws 1897, p. 250, § 45 (Rem. & Bal. Code, §6750), *supra*, where instead of the words "lands of the first class," the words "tide and shore lands of the first class" are used. The occasion for this legislative change from the act of 1890 becomes apparent from an examination of *Scurry v. Jones*, 4 Wash. 468, 30 Pac. 726, decided June 24, 1892, after the enactment of the statute of 1890, manifestly the statute inadvertently and unnecessarily considered in the *Denny* case. Section 2, article 17, of the state constitution, reads as follows:

"The state of Washington disclaims all title in and claim to all tide, swamp, and overflowed lands patented by the United States: Provided, The same is not impeached for fraud."

In the *Scurry* case this court held that although a patent issued by the government for lands bounded by a meander line would convey title to the line of ordinary high water only, yet § 2 of art. 17, of the state constitution, while not in terms confirmatory of title acquired under such patent to overflowed land or land lying above the meander line and below the line of high water, was substantially a grant to the patentee of the interest of the state in such overflowed land. Appellant's and respondent's lots were all included within the boundaries of the land patented to William H. Patterson in the year 1869. Respondent's land as platted in block 78 of Burke's second addition is located below the line of high water and above the government meander line, is a portion

of overflowed land patented by the United States in 1869, and has not been impeached for fraud. Under § 2, art. 17, of the constitution, *supra*, the title to this land was granted and passed to the original patentee or his grantees, from whom respondent has deraigned title. Such overflowed and patented land, now belonging to respondent, thereupon became private property in which the state thereafter had no interest, and which it could not and did not claim or plat as shore lands. After our decision in the *Scurry* case, the act of 1895 was passed, giving the preference right to the owner or owners of land abutting or fronting upon lands of the first class. The *Scurry* case has since been approved and followed by this court. *Cogswell v. Forrest*, 14 Wash. 1, 43 Pac. 1098; *Washougal & La Camas Trans. Co. v. Dalles, Portland & A. Nav. Co.*, 27 Wash. 490, 68 Pac. 74. In the last case cited, at page 497, we said:

" 'Meander-lines,' says Mr. Justice Clifford, in *Railroad Company v. Schurmeir*, 7 Wall. 272, 'are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser.'

"And in that case it was held—over the contention that a tract of land granted according to the description contained in the official surveys stopped at the meander line run along the banks of a navigable stream—that high-water mark on the stream itself, and not the meander line, was the boundary line. To the same effect are the following cases: *Jefferis v. East Omaha Land Co.*, 134 U. S. 178; *Hardin v. Jordan*, 140 U. S. 371; *Shively v. Bowlby*, 152 U. S. 1; *Horne v. Smith*, 159 U. S. 40.

"But counsel seem to think this court has, in its previous decisions, announced a different rule. The cases chiefly relied upon to support this claim are *Scurry v. Jones*, 4 Wash. 468, 30 Pac. 726, and *Cogswell v. Forrest*, 14 Wash. 1, 43 Pac. 1098. These cases hold that the state of Washington,

by the disclaimer in its constitution (§ 2, art. 17), waived its right to assert title to such of the tide lands as lay *above* the meander line run by the government surveyors as the boundary of uplands which had been conveyed by patent from the government of the United States prior to the admission of the state into the Union. But however illogical it may seemingly be to hold that the meander line marks the boundary of a government grant when it runs below the line of ordinary high-water mark, but does not so mark it when it runs above that line, it is plain that the distinction rests upon widely differing principles. The title to all tide and shore lands passed to the state at the time of its admission into the Union. From thenceforward the state had the sole and absolute right and power of disposition over such lands, and it could, either in its fundamental law, or by statutory enactment, provide for their disposition. When, therefore, by its constitution, it disclaimed 'all title in and claim to all tide, swamp, and overflowed lands patented by the United States,' it was within the power of this court to determine the effect of the disclaimer; and the court could very properly hold that its effect was to vest title in the upland owner of all tide lands lying within the meander lines described in the calls of his patent."

In *Van Siclen v. Muir,* 46 Wash. 38, 89 Pac. 188, we again said:

"But in this state the line of ordinary high water does not always determine the boundary line of the land of an upland owner where his land borders on navigable waters. In grants made prior to the adoption of the constitution, as in the case at bar, it marks the boundary only where the navigable water has not been meandered by the government, or the meander line runs above the line of ordinary high water; where the meander line runs below that line, the meander line itself marks the boundary of the grant to the upland owner."

These decisions, based upon the constitutional provision cited, unquestionably show that where lands bounded by a meander line located below the line of high water were patented prior to the adoption of the constitution, the title to overflowed lands lying above the meander line was granted to

the patentee or his grantees. Although it is the general legislative policy of the state to award the preference right to the owner of abutting upland, it is evident, from statutes enacted in the light of decisions of this court, that the legislature intended ownership of overflowed lands patented prior to the adoption of the constitution, located below the line of high water and above the meander line, should confer the preference right to purchase tide or shore lands upon which the same fronted or abutted; lands thus patented and owned being private property, and not tide or shore lands subject to state ownership or control. It was to carry out this intention that the legislature in the act of 1895, and again in the act of 1897, provided that the owner or owners of land abutting or fronting upon lands of the first class, or upon tide or shore lands of the first class, should have the preference right.

Although the term "upland" is used in subsequent portions of these acts, and ownership of uplands has been mentioned by this court as necessary to the preference right, it was not the intention of the legislature or this court to announce the rule that uplands should invariably refer to land above and abutting on the line of high water, to the exclusion of overflowed lands above the meander line patented prior to the adoption of the constitution, which the state, after the adoption of the constitution, could neither plat nor sell as tide or shore lands. Although respondent's land, strictly speaking, is not upland, it must be so regarded by reason of its location and the character of his title, for the purpose of conferring the preference right to purchase the shore land upon which it fronts or abuts. This construction is in accord with the general policy of the state as evidenced by its legislative acts, which is to give the preference right to the owner of lands held as private property, fronting or abutting upon the inner line of the tide or shore land owned, platted and sold by the state. Any other construction

would give the preference right to an owner whose upland might not abut upon the platted tide or shore lands, with the result that when a sale of the shore lands had been made to him, other land privately owned, to which the state neither had nor claimed title, would intervene between his upland and the shore land which he had purchased from the state, a condition the legislature neither contemplated nor intended, but which it sought to avoid when granting the preference right. Our conclusion is that while the preference right to purchase will ordinarily be awarded to the owner of the upland, strictly speaking, yet an owner holding title such as respondent holds, must, for the purpose of ascertaining the preference right, be regarded as the upland owner when his land in fact fronts or abuts upon the shore lands platted and offered for sale by the state.

The judgment is affirmed.

CHADWICK, ELLIS, GOSE, and MORRIS, JJ., concur.