[No. 15617.  *En Banc*.  December 14, 1920.]

# HEWITT-LEA LUMBER COMPANY, *Appellant*, v. KING COUNTY, *Respondent*.[1]

NAVIGABLE WATERS (24)—GRANTS—TITLE TO MEANDER LINE.  Under the disclaimer on the part of the state, in Const., art 17, § 2, to all tide, swamp and overflowed lands patented by the United States, a United States patent, prior to statehood, passes title to all the lands above the meander line, although covered by the navigable waters of a slough in a lake.

SAME (21, 24)—GRANTS AND RIGHTS OF PATENTEES—OWNERSHIP AND CONTROL—GOVERNMENT IMPROVEMENT OF NAVIGATION.  A riparian owner's title to lands underlying navigable waters within the meander line is a base or qualified fee, subject to the right of the government to improve the navigability of the waters; and it is immaterial that the improvement is undertaken, not directly by Congress, but by a county under permission of Congress, for the benefit of the general public.

EMINENT DOMAIN (57, 61)—COMPENSATION—ELEMENTS AND PROPERTY SUBJECT—PREVENTING ACCESS TO NAVIGATION.  The base or qualified fee of a riparian owner to lands underlying navigable waters within the meander line is taken or damaged, within the meaning of Const., art 1, § 16, entitling him to compensation, where the navigability of the waters is destroyed through the lowering of the waters by the construction of a ship canal, although the improvement created a new artificial navigable course elsewhere.

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 23, 1919, upon findings in favor of the defendant, dismissing an action for damages to property, tried to the court.  Reversed.

*Alexander & Bundy* and *Peters & Powell*, for appellant.

*Fred C. Brown, Howard A. Hanson*, and *Bert C. Ross*, for respondent.

[1]Reported in 194 Pac. 377.

Tolman, J.—Appellant, as plaintiff below, brought this action to recover from respondent, damages in the sum of $125,000 alleged to have been suffered by it from the lowering of the waters of Lake Washington through the construction of the Lake Washington ship canal, which lowering caused the waters of Mercer Slough, an arm of Lake Washington, to recede, thus destroying appellant's use of the slough as a means of transporting its products from its mill at the head of the slough to Lake Washington, or, in other words, caused a loss of its right to navigate Mercer Slough.

Prior to the trial below, it was stipulated that the issues, other than the amount of damages, should be tried to the court, and if the court should find that appellant was entitled to recover substantial damages, that issue should later be submitted to a jury.

At the conclusion of the trial to the court, the court found that appellant was not entitled to substantial damages, and entered judgment of dismissal, from which result this appeal was taken.

I.  The first issue here presented is, was Mercer Slough navigable for general commercial purposes before the lowering complained of, or only navigable in a special sense for the towing of logs, etc.  Upon this subject there is considerable conflict in the evidence, but a careful reading of the record convinces us that the evidence does not preponderate against the findings of the trial court, that the slough was navigable in the general commercial sense, by which finding we are therefore bound.

II.  It appears that Mercer Slough extends from Lake Washington easterly about two miles; that it was meandered by the government many years ago, on both sides from the lake, about half way of its length, and the upper half was never meandered, and the whole of

the upper part of the slough may be said to be above the meander line. Government survey lines were run across the upper half as though it did not exist, and the lands through which it extended were laid off and patented in regular government subdivisions. Appellant owns the lands at and near the head of the slough, and these lands were acquired by its predecessors in interest by a patent from the United States government prior to the admission of Washington as a state, and at a time when title thereto was in the government, subject only to its trusteeship in lands under navigable waters for the future state.

Appellant therefore contends that it has title to all the lands within the description contained in the patent, even though covered in part by the navigable waters of Mercer Slough. In *Scurry v. Jones,* 4 Wash. 468, 30 Pac. 726, this court upheld a similar contention as to tide lands and re-affirmed its ruling in *Cogswell v. Forrest,* 14 Wash. 1, 43 Pac. 1098, and *Kneeland v. Korter,* 40 Wash. 359, 82 Pac. 608, 1 L. R. A. (N. S.) 745. In *Washington Boom Co. v. Chehalis Boom Co.,* 90 Wash. 350, 156 Pac. 24, the rule was recognized, but held not to apply in that case by reason of dissimilarity of the facts. The disclaimer on the part of the state, § 2, Art. 17 of the Constitution, is not confined to tide lands, but specifically covers, . . . "All tide, swamp and overflowed lands patented by the United States," and no reason is preceived why the rule as to tide lands which has been so long and firmly established, should not be extended to swamp and overflowed lands over which the tide does not ebb and flow. We are therefore constrained to hold that appellant has title to all the lands within the calls of the patent under which it holds, notwithstanding that a portion of such lands are covered by the navigable waters of Mercer Slough above the meander line.

III.   Having title to the lands up to and underlying the navigable waters of the slough, has appellant the unqualified right to have such waters remain undisturbed, or may such waters be withdrawn, in the improvement of navigation generally, without making compensation to those damaged thereby?

Respondent contends, and the trial court held that this is a case of *damnum absque injuria,* because of the fact that whatever injury or damage appellant sustained, by reason of the lowering of the waters of Mercer Slough, was caused by King county, under authority of the state, and by virtue of the state's power to improve the navigability of navigable waters of the state.   It is conceded that the county has authority here to exercise the state's power, and our inquiry must be whether the state has power to inflict the injury complained of without making compensation, because it does so for the purpose of improving navigation.

It must be borne in mind that the acts complained of were not done by the Federal government, or under authorization by Congress. · In *Carlson v. State of Washington,* 234 U. S. 103, after reviewing the congressional and state legislation with reference to the Lake Washington waterway, the supreme court of the United States held that Congress had not authorized the work on behalf of the Federal government, and that all responsibility connected therewith was assumed by the state and county up to the point of the completion of the work and its acceptance by the Federal government.

As applied to the Federal government, 'the supreme court seems to have drawn the line somewhat sharply, in some cases, between the taking of property for the purpose of improvement of navigation, and the dam-

aging of property for the same purpose. The reason for the distinction may lie in the fact that the Federal constitution forbids the taking of private property for public uses without making just compensation, while it is entirely silent upon the subject of damaging private property for a like purpose. *Gibson v. United States,* 166 U. S. 269; *Bedford v. United States,* 192 U. S. 217.

Our own constitution differs from the Federal constitution upon this subject, in that it provides:

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner." Const., art. 1, § 16.

We need not inquire whether this provision of our constitution would be binding upon the Federal government, had it prosecuted the work complained of, but only whether the county is bound thereby. The supreme court of the United States, in a number of cases, has dealt with questions of taking and damaging private property for the purpose of improving navigation and kindred purposes, and upon these decisions the learned trial court relied. In *United States v. Chandler-Dunbar Water Power Co.,* 229 U. S. 53, it was held that the title of the riparian owner to the bed of a navigable stream is a qualified title, and subordinate to the public right of navigation, and subject also to the absolute power of Congress over the navigable streams, and in *Lewis Bluepoint Oyster Cult. Co. v. Briggs,* 229 U. S. 82, Ann Cas. 1915A 232, the same court said:

"By necessary implication from the dominant right of navigation, title to such submerged lands is acquired and held subject to the power of Congress to deepen the water over such lands or to use them for any structure which the interest of navigation, in its

judgment, may require. The plaintiff in error has, therefore, no such private property right which, when taken, or incidentally destroyed by the dredging of a deep water channel across it, entitles him to demand compensation as a condition.''

See, also, *Scranton v. Wheeler,* 179 U. S. 141. In all of these cases it was held that the government, in carrying out the improvement of navigation authorized and directed by act of Congress, might take, use, or consequently damage submerged lands belonging to private owners without making compensation, upon the theory that the owner of such submerged lands had a qualified title only, which was subject not only to the paramount right of the public to carry on navigation thereover in its natural state, but likewise to the paramount right of Congress to improve navigation, and a taking, if any there was, was not the taking of anything which belonged to the holder of such qualified title. The right to take or damage such submerged lands should not be confused with the flooding of adjacent lands by raising the stream above its natural level. The distinction in this class of cases is clearly pointed out in *United States v. Cress,* 243 U. S. 316.

. If this be the rule, then appellant and its predecessors in interest, when they took title from the Federal government, took only a base or qualified title to that portion of the lands embraced in the patent which were covered by the navigable waters of Mercer Slough, and by the law of the land, there was reserved the paramount right not only of navigation, but also of using the lands as might be required in the improvement of navigation. In other words, if this be an improvement of navigation, nothing which appellant owned was taken or damaged, and therefore there was no infringement of our constitutional provision hereinbefore quoted.

That the improvement was undertaken and carried out, not under direct authority of Congress, but by King county, by permission of Congress, for the use and benefit of the general public, does not seem to affect the question. If appellant's title was at all times subject to the right to improve navigation for the public benefit, it cannot complain because the Federal government, instead of doing the work, directly permitted others to do it for the same purpose. *Monongahela Nav. Co. v. United States,* 148 U. S. 312.

IV. But it is contended that, nothwithstanding what has been said, appellant may recover because the damage was caused, not by the improvement of the navigability of Mercer Slough, or even Lake Washington, but by the opening of an artificial water course connecting Lake Washington with tide water in Puget Sound. The supreme court of Illinois in passing upon a similar question, said:

"While it is true that the rights of the plaintiffs are subject to the public right of navigation, and that damages resulting in consequence of any work by the public for the purpose of improving navigation are damages for which no recovery can be had, still it must be manifest that the right of navigation and the right of improvement for the purposes of navigation, which are superior to the rights of the plaintiffs, must be the right to navigate the south branch of the Chicago river and to improve navigation in that branch, or some stream or lake whose waters naturally flow into that branch, or into which that branch naturally flows. Here the waters were taken and their general level reduced for the purpose of making navigable an artificial channel, and not for the purpose of facilitating the navigation of the south branch of the Chicago river, or any stream or body of water naturally emptying into it, or any stream or lake into which it naturally empties." *Beidler v. Sanitary District of Chicago,* 211 Ill. 628, 67 L. R. A. 820, 839.

In *Fulton Light H. & P. Co. v. State,* 200 N. Y. 400, 94 N. E. 199, 37 L. R. A. (N. S.) 307, it is said:

"That a stream, adequate in size for public transportation or passage, should be subjected to a control, or a regulation, confined to such purposes, suggests no legal injury to riparian ownership. But when, under the plea of the improvement of navigation, the property of the riparian owner is taken, or diminished by the diversion of the waters, for a public work not within, but wholly outside, the channel of the river, I think there is a clear case for the enforcement of the constitutional guaranty of compensation. If the appropriation is for a purpose not incidental to the natural, or public, servitude in the river, how could that provision of the fundamental law of this government— so instinct with the principle of justice—find juster application? The state, by the exercise of its power of eminent domain, could take these claimants' lands and divert from their power plant properties the water power which operated them, upon making just compensation therefor; but in my opinion, it had no unlimited right to make a use of the river for a public purpose, except as such purpose was related to the improvement of the channel, or bed, of the river itself, for purposes of navigation or transportation."

See, also, Farnum on Waters, § 134.

To us it seems that the word "improvement," as here used, in and of itself, conveys the idea of bettering that which theretofore existed, rather than the creation of something entirely new, and that it would be arbitrary and illogical to hold that, under the guise of improvement, that which theretofore existed might be wholly or partially destroyed in order that something entirely new might come into existence. So far as we can gather from the record before us, the construction of the ship canal, and the consequent lowering of the waters of Lake Washington, has entirely destroyed the navigability of Mercer Slough, and cannot

but have lessened the navigability of Lake Washington. That the canal connects the lake with tidewater, permitting vessels to enter from the sea, does not add to the navigability of the lake, and such canal being wholly artificial, appellant's title, base and qualified though it be, is not subject to any paramount right with respect thereto.

We conclude, therefore, that appellant has suffered substantial damages and that issue must be tried out.

Reversed and remanded.

HOLCOMB, C. J., MAIN, MITCHELL, MACKINTOSH, BRIDGES, and PARKER, JJ., concur.