[No. 39995. Department One. November 13, 1969.]

WARREN M. ANDERSON et al., Respondents, v. IVAN A. OLSON et al., Appellants.*

*Marion Garland* and *Frederick B. Cohen,* for appellants.

*Stouffer & Knight,* by *Wayne B. Knight,* for respondents.

*The Attorney General, Harold T. Hartinger* and *J. R. Pritchard, Assistants,* amici curiae.

FINLEY, J.—Respondents Anderson are the owners in fee simple of certain uplands in Pierce County. Their title is derived through mesne conveyances from one James Brown, who on May 11, 1885, made a homestead entry on those uplands. On April 18, 1892, Brown obtained a final receiver's receipt on the uplands, and a patent in his name issued on July 11, 1892. The latter two occurrences were after statehood in 1889.

Appellants Olson are the successors in interest of Agaton Olson, to whom the state of Washington conveyed by a deed dated August 25, 1945, "all tidelands of the second class[1] owned by the State of Washington situate in front of, adjacent to or abutting upon the east 3 chains of Lot 4,

*Reported in 461 P.2d 343.

[1]*See* RCW 79.01.024. *See also* RCW 79.01.020 (first class tidelands) and RCW 79.01.008-016.

Section 27 . . ." These tidelands are located to seaward of respondents' uplands.

Respondents commenced this action to quiet title to tidelands lying in front of their uplands (title to which is not questioned), specifically, those tidelands lying between the meander line and the line of ordinary high tide. The meander line lies to seaward of the line of ordinary high tide in this area. Respondents alleged ownership on two grounds: (1) record title derived from a United States patent under the Homestead Acts, and (2) adverse possession under color or title for the statutory period. Appellants answered, denying that the patent in question had passed title to respondents' predecessor and denying adverse possession. Cross-motions for summary judgment were made, and the trial court awarded summary judgment to respondents Anderson, relying upon their title under the federal patent.

It must be made clear at the outset that the title asserted by the respondents, although based upon their holding through a federal patent, is entirely dependent upon state law, namely, the interpretation and legal effect attributable to article 17, section 2 of the Washington constitution under our decisions.

■ Under the original states doctrine, see *Shively v. Bowlby,* 152 U.S. 1, 38 L. Ed. 331, 14 S. Ct. 548 (1894), *and Pollard's Lessee v. Hagen,* 44 U.S. (3 How.) 212, 11 L. Ed. 565 (1845), the tidelands and shorelands of states admitted to the Union subsequently to the original thirteen are said to have been held in trust by the federal government for the future states, and to have passed to those states upon their respective admissions into the Union. Although Congress possessed the power to make grants of those lands, that power was seldom exercised. *See Narrows Realty Co. v. State,* 52 Wn.2d 843, 329 P.2d 836 (1958).

It is a settled rule of construction of *federal patents* to uplands bordering upon navigable waters that, as a matter of federal law, the patents pass title only to the line of

ordinary high water. *Shively v. Bowlby, supra.*[2] As a pre-statehood patent, the question is one of congressional intent, *see Shively v. Bowlby, supra,* and *Narrows Realty Co. v. State, supra;* as to a purported poststatehood grant, it is a question of congressional inability to convey title to tidelands which upon statehood passed to the states. *Borax Consol., Ltd. v. Los Angeles,* 296 U.S. 10, 17-18, 80 L. Ed. 9, 56 S. Ct. 23 (1935).

It follows from the above discussion that whatever right respondents may have to the tidelands in question—lands which lie to seaward of the line of ordinary high tide, but inshore of the meander line—is derived from article 17 of the Washington constitution. Although their federal patent creates, in and of itself, no rights in the tidelands, "[r]ights and interests in the tideland [as federally defined], which is subject to the sovereignty of the State, are matters of local law." *Borax Consol., Ltd. v. Los Angeles, supra* at 22; *Shively v. Bowlby, supra.* The state may grant away, upon terms within its own discretion, the tidelands which the federal government has given to the state. Article 17, section 2 of the Washington constitution is such a grant, and, as to those to whom it applies, passed title to tidelands in those cases in which the meander line is located to seaward of the 1889 line of ordinary high tide. *Scurry v. Jones,* 4 Wash. 468, 30 P. 726 (1892); *Narrows Realty Co. v. State, supra.*

Appellants in this case dispute respondents' title upon the ground that respondents are not within the terms of article 17, section 2 in that, on November 11, 1889, respondents' predecessor in title did not claim tidelands patented

---

[2]In *Hughes v. Washington,* 389 U.S. 290, 19 L. Ed. 2d 530, 88 S. Ct. 438 (1967), it was established that the line of ordinary high water, with respect to tidelands bounding uplands held under a pre-statehood patent, was a moving boundary, *i.e.,* that the owner of the upland was entitled to accretions by virtue of a pre-statehood federal patent. *See generally* Corker, *Where Does the Beach Begin, and to What Extent Is This a Federal Question?,* 42 Wash. L. Rev. 33 (1966). A fruitful comparison may be made between the *Hughes* opinion in the U. S. Supreme Court and Professor Corker's comments on the position assumed by the Solicitor General re a grant of certiorari. *Id.* at 115.

by the United States, as that phrase has been construed in this court's decision.[3] It is appellants' contention that, because Brown's lands were not patented in fact or in effect, article 17, section 2 did not operate to disclaim state title and to grant title to respondents. Therefore, appellants assert that their deed from the state is valid and gives title to the tidelands in question.

The Attorney General, as amicus curiae, has filed an extensive brief in support of both the appellants' contention and their implicit argument that the state deed by which they claim conveys to the line of ordinary high tide.[4]

We have held that where an entry has been made under the Timber and Stone Act, 20 Stat. 89, and proof of all facts necessary to cause a patent to issue was made prior to statehood, that the circumstance that the patent did not issue prior to statehood did not deprive the prospective patentee or his successor in interest of the benefits of article 17, section 2. *Narrows Realty Co. v. State, supra.* We have also held that successors in interest of those claiming under the railroad land grants were entitled to the benefit of article 17, section 2, regardless of the date of the federal patent. *Wilson v. Prickett,* 79 Wash. 89, 139 P. 754 (1914); *Kneeland v. Korter,* 40 Wash. 359, 82 P. 608 (1905).

The test set forth in our cases is a simple one. If it is established that the claimant under the federal patent at the time of statehood had made proof of all facts neces-

---

[3]There are no claims of reliction, erosion, or accretion involved in the instant case.

[4]Location of that line upon the ground is legally, and practically, a vexing problem. *See Hughes v. State,* 67 Wn.2d 799, 410 P.2d 20 (1966), *rev'd sub. nom. Hughes v. Washington, supra;* note 2, *supra; Borax Consol., Ltd. v. Los Angeles, supra;* and the Samson Johns litigation, *United States v. Gas & Oil Dev. Co.,* 126 F. Supp. 840 (W.D. Wash. 1954), *vacated sub. nom. United States v. Washington,* 233 F.2d 811 (9th Cir. 1956), *unreported opinion below reversed,* 294 F.2d 830 (9th Cir. 1961), *cert. denied* 369 U.S. 817 (1962). The Ninth Circuit has held the line to be mean high tide as fixed by the U.S. Coast and Geodetic Survey. 294 F.2d at 834. As to practical problems associated with such a reading of *Borax, see,* Corker, *supra* note 2 at 68-72.

sary to cause the patent to issue, article 17, section 2 operates as a grant to the claimant of title to the tidelands.

We turn to the question of whether James Brown, the respondents' predecessor, is shown by this record to have made such necessary proof. Under the statute in question, Brown was required to prove certain facts relative to his *status*, which we will presume from the subsequent issuance of a patent.[5] He was additionally required to prove 5-years' residence and cultivation within 7 years of his entry, and was liable to a forfeiture if 6-months' abandonment without the statutory excuse or a change of residence were shown against him. Rev. Stat. §§ 2291, 2297 (2d 1878). As an alternative to residence and cultivation, he could make a commutation and purchase the land at any time before the expiration of the 5 years. Rev. Stat. § 2301 (2d 1878).

The record in the case indicates that Brown did not make a commutation of his homestead entry, but proved his right to the uplands under the residence and cultivation requirements. There is no evidence in the record indicating that Brown was entitled to the benefit of such time-reducing provisions as Rev. Stat. § 2305 (2d 1878) (military service) or § 2317 (silviculture). It follows that the earliest time at which Brown could possibly have made proof of all facts necessary to cause the patent to issue was May 11, 1890. However, the only facts in the record from which we can establish Brown's entitlement to a patent are those arising by implication from the final receiver's receipt of April 18, 1892.

*Narrows Realty Co. v. State, supra,* identifies the issuance of a final receiver's receipt with the proof of all facts necessary for a patent to issue. It is conceivable that one

---

[5] "Every person who is the head of a family, or who has arrived at the age of twenty-one years, and is a citizen of the United States, or who has filed his declaration of intention to become such, as required by the naturalization laws, [shall be entitled to make a homestead entry]." Rev. Stat. § 2289 (2d 1878). Rev. Stat. § 2300 rendered military service in time of war the equivalent of having attained the age requirement.

could have been in a position to make the proof necessary to obtain a receiver's receipt at some time materially different from the time at which the proof was made, and that one's successor in interest could be capable of establishing that fact. That factual situation is not presented upon this record.

It follows that entry of summary judgment for the respondents Anderson was erroneous. The rights of a mere entryman, although capable of ripening through time and cultivation or the performance of other conditions into a proven right to a patent, are not those of one in possession of a receiver's receipt, which indicates that issuance of the patent was only a ministerial act and that the holder of the receipt has made proof of performance of the conditions exacted by Congress to perfect a homestead upon the public lands.

The second count of the Anderson complaint was grounded upon adverse possession. The trial court does not appear to have considered the record in relation to this count, since in its opinion the recorded title was dispositive of the case. It follows that any further discussion of the issues raised by the appellant and the amicus brief would be premature.

The Attorney General as amicus curiae has called for construction of the tidelands deed. Such construction would appear, in view of our disposition of the constitutional question here, to involve the interests of the state as possible owner of the disputed land. *See Bartlett v. Hoshor*, 162 Wash. 572, 298 P. 1057 (1931). The interest of the state cannot be adjudicated in the present posture of this lawsuit. *Harkins v. Del Pozzi*, 50 Wn.2d 237, 310 P.2d 532 (1957). It is accordingly suggested that upon the remand for consideration of the second count of respondents' complaint the state intervene or be joined as a party.

Reversed and remanded for further proceedings in accordance with this opinion.

HUNTER, C. J., WEAVER and McGOVERN, JJ., and JOHNSEN, J. Pro Tem., concur.