[No. 41225.    En Banc.    March 11, 1971.]

SMITH TUG & BARGE CO., et al., *Respondents*, v. COLUMBIA-PACIFIC TOWING CORPORATION and BERT L. COLE, *as Commissioner of Public Lands, Appellants.*

MARIBETH W. COLLINS et al., *Respondents*, v. RAINIER MANUFACTURING CO. and BERT L. COLE, *as Commissioner of Public Lands, Appellants.**

*The Attorney General* and *Theodore O. Torve, Assistant,* for appellants.

*Klingberg, Houston, Reitsch & Cross, Judson T. Klingberg*

*Reported in 482 P.2d 769.

and *Gerry A. Reitsch,* for respondents Smith Tug & Barge Co., et al.

STAFFORD, J.—The predecessors of respondent upland owners acquired their interest in the realty here in question from the United States government. The property as originally patented and meandered abutted the navigable waters of the Columbia and Cowlitz rivers, at or near their confluence.

The government meander line, established by surveys in 1857 and 1863, substantially conformed to the line of ordinary high water as it existed on those dates. However, the location of the line of ordinary high water at the time of statehood is unknown.

During the intervening years accretions have occurred along both navigable rivers causing the line of ordinary high water to shift riverward so that the meander line is now situated a considerable distance landward of the line of ordinary high water. On the other hand, a reverse action has occurred at other points where the flow of the two navigable rivers has gradually eroded their banks. As a result, the line of ordinary high water, once coextensive with the meander line, has shifted inland thereof leaving the meander line several hundred feet out in the navigable stream in many areas. In the latter areas the lands lying between the meander line and the present line of ordinary high water are now submerged and have become a part of the bed of the navigable rivers. The last mentioned land is the subject of dispute in this case.

Respondent upland owners conveyed to respondent lessees the right to erect, on the submerged land (*i.e.,* the riverbed) in front of their uplands, certain piling, dolphins, booms and other appliances for the purpose of booming, rafting and sorting logs. The appellant Commissioner of Public Lands, acting for the State of Washington, leased the same part of the riverbed to appellant lessees.

Respondents initiated this action for a declaratory judgment seeking to quiet title of the upland owners to the disputed riverbed and to have the rights of their lessees

declared superior. Appellants counterclaimed asking that the state be declared the lawful owner of the riverbed and that the leases issued under its claim of ownership be declared valid.

The trial court quieted respondents' title to the riverbed lying between the meander line, as it is now situated out in the navigable river, and the present line of ordinary high water. The trial court also held that all accretions which occurred riverward of the meander line belong to the respondents.

Appellants have not challenged the trial court's judgment pertaining to the accreted lands. However, they have assigned error to that portion of the judgment which quiets respondents' title to those submerged lands which comprise a part of the navigable riverbed.

Before examining the basis for the conflicting claims, we shall first advert to the general rules which control in the cases of navigable rivers. It is well recognized that when federal patents border on a navigable river and the course of the river is changed by accretion or gradual erosion, the owner's water boundary shifts with the natural and gradual moving of the course of the river. *Ghione v. State,* 26 Wn.2d 635, 175 P.2d 955 (1946); *Jefferis v. East Omaha Land Co.,* 134 U.S. 178, 33 L. Ed. 872, 10 S. Ct. 518 (1890); *Arkansas v. Tennessee,* 246 U.S. 158, 62 L. Ed. 638, 38 S. Ct. 301 (1918); 4 H. Tiffany, The Law of Real Property, §§ 1219-20 (3d ed. 1939, Supp. 1970). In short, every patentee whose land is bounded by a navigable river is subject to loss of his realty by gradual erosion and addition to his land by accretion. *Mayor, Aldermen & Inhabitants of New Orleans v. United States,* 35 U.S. (10 Pet.) 660, 716, 9 L. Ed. 573 (1836). As indicated in *Jefferis v. East Omaha Land Co., supra,* at 195, the rule is as much applicable to the government as it is to private individuals.

Respondents do not question the general principle just stated, but they argue that it is only partially applicable here. They readily accept the *shifting boundary* concept insofar as it grants them accretions to patented lands bounded by navigable rivers. However, they reject it inso-

far as it causes them to lose patented land by gradual erosion of the river's bank. They assert that this anomaly results from the constitutional disclaimer contained in article 17, section 2 of the Washington State Constitution.[1]

■ Respondents acknowledge that the state claims ownership "to the beds and shores of all navigable waters in the state . . . up to and including the line of ordinary high water within the banks of all navigable rivers . . ." Const. art. 17, § 1. They argue, however, that insofar as erosion is concerned, the constitutional "disclaimer" *permanently fixed* the boundaries of federal patents, abutting navigable waters, at the line of ordinary high water or at the meander line, whichever was the farthest waterward. Essentially their argument is based on a combination of three cases and their legal progeny: *Scurry v. Jones,* 4 Wash. 468, 30 P. 726 (1892); *Cogswell v. Forrest,* 14 Wash. 1, 43 P. 1098 (1896); and *Washougal & LaCamas Transp. Co. v. Dalles, Portland & Astoria Nav. Co.,* 27 Wash. 490, 68 P. 74 (1902).

*Scurry* was the first case to provide that all lands within the calls of a federal patent, lying waterward of the line of ordinary high tide, belong to the patentee if the patent was issued prior to statehood. Despite Const. art. 17, § 1, which establishes the state's claim to ownership of the beds and shores of all navigable waters up to and including the line of ordinary high tide in waters where the tide ebbs and flows, it was held that the "disclaimer" clause of Const. art. 17, § 2 prevails when the calls of a patent extend waterward of the line of ordinary high tide.

It must be noted, however, that *Scurry* did not discuss the second portion of Const. art. 17, § 1 in which the state claims ownership of "the beds . . . of all navigable waters . . . up to and including the line of ordinary high water *within the banks of all navigable rivers* . . ." (Italics ours.) The case dealt solely with patented lands located on a *bay.* The importance of the distinction is evi-

---

dent. With the exception of *Washougal,* the application of *Scurry* has been limited to cases which have involved boundaries to patented lands bordering the Puget Sound,[2] bays,[3] lakes,[4] or waters treated as a bay.[5]

*Cogswell v. Forrest, supra,* was the first case to crystalize respondents' theory. *Cogswell* extended the *Scurry* decision by holding that if lands patented prior to statehood border navigable waters, a meander line located waterward of the line of ordinary high water is a *fixed* boundary. The land in *Cogswell* was located at the mouth of the Puyallup River virtually on the *bay.* The sole authority for the court's holding was *Scurry,* itself a "bay" case.

With the exception of *Washougal,* we have limited the holding of *Cogswell* to patented lands which border meandered navigable waters of Puget Sound,[6] or of lakes.[7] In light of respondents' theory, the historical limitation of *Cogswell's* authority assumes an importance similar to our limited use of *Scurry.*

*Washougal,* the last of the triad, is presented by respondents as an extension of *Scurry* and *Cogswell.* Respondents suggest the decision in *Washougal* supports their contention that lands patented prior to statehood, which border on navigable meandered *rivers,* have water boundaries that are *fixed* against *erosion* of the patentee's boundary. *Washougal* is the only case in which we have discussed the "dis-

---

[2]*Kneeland v. Korter,* 40 Wash. 359, 82 P. 608 (1905); *Narrows Realty Co. v. State,* 52 Wn.2d 843, 329 P.2d 836 (1958).

[3]*State ex rel. Battersby v. Board of Tide Land Appraisers,* 5 Wash. 425, 32 P. 97 (1892); *State ex rel. McKenzie v. Forrest,* 11 Wash. 227, 39 P. 684 (1895); *Anderson v. Olson,* 77 Wn.2d 240, 461 P.2d 343 (1969).

[4]*Brace & Hergert Mill Co. v. State,* 49 Wash. 326, 95 P. 278 (1908); *Bleakley v. Lake Wash. Mill Co.,* 65 Wash. 215, 118 P. 5 (1911); *Hewitt-Lea Lumber Co. v. King County,* 113 Wash. 431, 194 P. 377, 21 A.L.R. 201 (1920).

[5]*Cogswell v. Forrest,* 14 Wash. 1, 43 P. 1098 (1896).

[6]*Kneeland v. Korter, supra.*

[7]*Brace & Hergert Mill Co. v. State, supra; Bleakley v. Lake Wash. Mill Co., supra; Hewitt-Lea Lumber Co. v. King County, supra.*

claimer clause"[8] in relation to the boundaries of patented lands bordering on meandered *navigable rivers*.[9]

In *Washougal* the patented lands were bounded by a navigable river. The meander line was *above* the line of ordinary high water. We held that the line of ordinary high water, rather than the meander line, was the boundary. In so doing, we explained that our adherence to the general rule was not necessarily inconsistent with either *Scurry* or *Cogswell*. Each was distinguished because the meander line lay *below* the line of ordinary high water thus bringing into play the "disclaimer clause" and a different result.

It is important to note, however, that *Washougal* did not apply the "disclaimer clause" to the facts at hand. It did not even suggest that the rule of *Scurry* and *Cogswell* should be extended to deprive the state of its claim to ownership in the beds of *navigable rivers*. At best, it cited Const. art. 17, § 2 to clarify and distinguish *Scurry* and *Cogswell*.

The *Washougal* case is seriously circumscribed by its own peculiar fact pattern. The lines of ordinary high and low water were practically coincident, differing only with the rise and fall of the river on a vertical bank. Thus, no shoreland existed other than that which was created in part by natural erosion of the riverbank landward of the original line of ordinary high water and in part by accretions artificially created by debris caught and held by piling driven into the riverbed during construction of a wharf, by predecessors in interest of the upland owners.

---

[8] Const. art. 17, § 2.

[9] Respondents have cited *Wilson v. Prickett*, 79 Wash. 89, 139 P. 754 (1914), which involved a nonnavigable, nonmeandered river, thus, it is not in point. Respondents have cited other cases equally inapplicable to the boundaries of rivers. *Van Siclen v. Muir*, 46 Wash. 38, 89 P. 188 (1907); *King County v. Hagen*, 30 Wn.2d 847, 194 P.2d 357 (1948); and *Mercer Island Beach Club v. Pugh*, 53 Wn.2d 450, 334 P.2d 534 (1959), all refer to lakes. *Stockwell v. Gibbons*, 58 Wn.2d 391, 363 P.2d 111 (1961), refers to a bay. *Washington Boom Co. v. Chehalis Boom Co.*, 90 Wash. 350, 156 P. 24 (1916), is concerned with an unmeandered salt water slough. *Hughes v. State*, 67 Wn.2d 799, 410 P.2d 20 (1966), *rev'd*, 389 U.S. 290, 19 L. Ed. 2d 530, 88 S. Ct. 438 (1967), referred to Pacific Ocean beaches.

The basic question was whether the state owned any shorelands thus created. Under these special facts, we held:

> *It cannot be that shorelands created by the erosion of the banks of a stream within the boundaries of a private claim inure to the benefit of the state;* nor can the state claim, as shorelands, fills in a river caused by artificial means.

*Washougal,* 27 Wash. at 499. (Italics ours.) Nevertheless, we also held that even though the state did not own the artificially created land it had the power to remove it as a nuisance if it interfered with navigation.[10]

Taken at face value, the italicized portion of the foregoing quotation is contrary to the generally accepted rules of accretion and erosion.[11] In fact, it is impossible to align the rationale of *Washougal,* which involves only *one* riverbank, with the normal rule which accounts for river action on *two* banks.

At best, *Washougal* is obscure. The case devotes only the passage quoted to the accretion-erosion problem, cites no authority, and gives the issue none of the consideration ordinarily expected of a case which, according to respondents, apparently set Washington law on a course different from that followed by most other states.[12] Significantly we have never cited it again for the proposition that lands patented prior to statehood, bordering on meandered navigable *rivers,* have water boundaries that are *fixed against erosion.*

Respondents have attempted to superimpose on navigable meandered rivers legal principles established by this court

---

[10]"It is generally agreed that the riparian owner will not be permitted to increase *his estate himself* by creating an artificial condition for the purpose of effecting such an increase . . ." (Italics ours.) 56 Am. Jur. *Waters* § 486, p. 899 (1947).

[11]The leading accretion-erosion cases state that when a boundary line is the line of any watercourse, gradual shifting of that line by either erosion or accretion results in a shift of the boundary line. *Jefferis v. East Omaha Land Co.,* 134 U.S. 178, 33 L. Ed. 872, 10 S. Ct. 518 (1890); *Arkansas v. Tennessee,* 246 U.S. 158, 62 L. Ed. 638, 38 S. Ct. 301 (1918); *Ghione v. State,* 26 Wn.2d 635, 175 P.2d 955 (1946).

[12]Corker, *Where Does the Beach Begin,* 42 Wash. L. Rev. 33, 82-83 (1966).

to cope with boundary problems peculiar to navigable lakes and bays, the sound and the ocean. However, the forces of nature and the legal problems involved are quite dissimilar.

Whereas the shores of navigable lakes, bays and the Puget Sound are subjected to some accretion and erosion, it is the very nature of rivers to shift and change their banks. Furthermore, rules of law which logically apply to the single bank and open shores of an ocean, sound or navigable bays and lakes, wherein the rights of the landowners on opposite shores seldom conflict, are completely irreconcilable with problems faced by owners of land bounded by navigable rivers. Rivers are confined to two immediately adjacent banks *both of which* are subject to constant change by accretion and erosion.

The incongruity of respondents' position is readily apparent if one considers the practical problem of two contesting patentees located on opposite banks of a meandered, navigable river. Followed to its logical conclusion, both parties could claim the same land if normally expected accretion and erosion take place. One would base his title on the accretions to his uplands (*i.e.*, the *shifting boundary* rule acknowledged, in such situation, by both parties). The other would claim the same land because it falls within the meander line located riverward of the line of ordinary high water (*i.e.*, respondents' theory that such a boundary is *fixed* thus preventing loss by erosion). Furthermore, in that "no man's land" created by use of the two incompatible rules, the state's ownership of the bed of the navigable river would be left in a state of continual uncertainty.

It is illogical to assume that the framers of the state constitution intended an interpretation of Const. art. 17, §§ 1-2 that would potentially deprive the state of such a necessary thing as ownership of the beds of its navigable rivers.

■■ A reasonable result can be reached only by applying the generally recognized rules pertaining to accretion and erosion of navigable rivers to problems peculiarly concerned with the navigable rivers of this state. First: meander lines are not boundaries of tracts of federal lands

patented prior to statehood. Insofar as such lands border on navigable rivers, meander lines were run for the purpose of defining the sinuosities of the banks of the river, and as a means of ascertaining the quantity of land. The watercourse itself, however, provides the actual boundary. *Ghione v. State,* 26 Wn.2d 635, 175 P.2d 955 (1946); *Railroad Co. v. Schurmeir,* 74 U.S. (7 Wall.) 272, 19 L. Ed. 74 (1868); 12 Am. Jur. 2d *Boundaries* § 29, p. 569 (1964, Supp. 1970). Second: the line of ordinary high water is the boundary of federal lands patented prior to statehood, if they abut navigable rivers. Third: such boundary shifts with the natural and gradual erosion and accretion of the river. Although one may lose his land by gradual natural erosion, he is entitled to the addition caused by natural accretion. *Ghione v. State, supra.* Insofar as *Washougal & La-Camas Transp. Co. v. Dalles, Portland & Astoria Nav. Co.,* 27 Wash. 490, 68 P. 74 (1902), is inconsistent with these principles, it is overruled.

We withhold any expression of opinion as to the effect of a change in water boundary between upland and tide or shoreland *after* the state has surveyed the tide or shoreland and has sold or otherwise conveyed it. That matter is not before us.

The judgment of the trial court is affirmed insofar as it provides that the respondent landowners and their lessees are entitled to the accreted lands lying between the present line of ordinary high water and the original meander line to the landward. Insofar as the submerged lands are concerned, however, the cause is remanded for entry of a judgment which provides that appellant State of Washington and its lessees are entitled to the beds of the navigable rivers which lie between the original meander lines in the rivers and the present lines of ordinary high water to which the rivers have now eroded.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and McGOVERN, JJ., concur.