[Nos. 16897, 16898, 16899. *En Banc.* May 20, 1922.]

THE STATE OF WASHINGTON, *on the Relation of First National Bank 'of Central City, Colorado, Appellant,* v. L. B. HASTINGS, *as Mayor of the City of Port Townsend, et al., Respondents.*

THE STATE OF WASHINGTON, *on the Relation of William H. Emerson, Appellant,* v. L. B. HASTINGS, *as Mayor of the City of Port Townsend, et al., Respondents.*

THE STATE OF WASHINGTON, *on the Relation of George Weldrick, Appellant,* v. L. B. HASTINGS, *as Mayor of the City of Port Townsend, et al., Respondents.*[1]

JUDGMENTS (152, 154, 162)—FRAUD (22)—COLLATERAL ATTACK—GROUNDS—INSUFFICIENT CAUSE OF ACTION—EVIDENCE—SUFFICIENCY. The evidence is insufficient to show that judgments against a city were entered pursuant to an agreement in fraud of the rights of the city, where it rests upon the memory of a councilman and the mayor, many years after, as to a compromise for the reduction of the rate of interest, which in fact appears to have been made after the entry of the judgments; their testimony being contradicted by that of the attorneys in the suits, who testified that the actions were tried and went to judgment in the regular manner without any agreement or compromise whatever.

MUNICIPAL CORPORATIONS (34, 505)—PROCEEDINGS OF COUNCIL—MODE OF ACTION—SPECIAL MEETINGS—WARRANTS—ISSUANCE—REQUISITES. City warrants issued in payment of judgments against the city pursuant to a resolution passed at "a special meeting," are not invalidated by the fact that Rem. Comp. Stat., § 9123, forbids the allowance of any "bill for the payment of money" at any "special" meeting; since the council merely authorized what the creditors could have enforced without any action by the council, under Id., § 953, providing for the manner of paying judgments against any county "or other public corporation" by the presentation of an order

[1]Reported in 207 Pac. 23.

by the proper city officer upon the treasurer, to be paid in like manner as other orders are paid.

SAME (181, 503)—PUBLIC IMPROVEMENTS—RIGHTS AND REMEDIES OF THIRD PERSONS—INSUFFICIENCY OF SPECIAL FUNDS—JUDGMENT—VALIDITY. A judgment against a city in favor of the holder of local improvements warrants, for negligence in failing to provide a fund for their payment, is not invalidated by failure to surrender the warrants at the time of the hearing, in view of their non-negotiable character and the finding of the court that the plaintiff was then the owner and holder of the warrants.

JUDGMENTS (215)—MUNICIPAL CORPORATIONS (363)—TAXATION—COMPELLING LEVY BY CITY—RES ADJUDICATA—MATTERS THAT MIGHT HAVE BEEN LITIGATED. In actions to compel the levy of taxes to pay warrants issued in payment of judgments against a city, the defense that, at the time of rendering the judgments, the city was indebted beyond its constitutional debt limit, is *res adjudicata*, since it might have been litigated at that time; it appearing that the judgments were entered after appearance by the city, by a court having jurisdiction of the subject-matter and the parties, and were never appealed from.

LIMITATION OF ACTIONS (7)—MUNICIPAL CORPORATIONS (514, 563)—TAXATION—COMPELLING LEVY OF TAX—LACHES. Actions to compel the levy of taxes to pay warrants against the general indebtedness fund of a city are not barred by the lapse of more than three years after a wrongful diversion by the city of moneys from the indebtedness fund, to the prejudice of the holders of the warrants, when the diversion was small in comparison with the total amount of outstanding warrants against the fund.

MUNICIPAL CORPORATIONS (174-177)—PUBLIC IMPROVEMENTS—FAILURE TO PROVIDE SPECIAL FUND—GENERAL LIABILITY. A city is not liable for negligently failing to provide a fund for the payment of local improvement assessments which were not a general indebtedness, even though its power to do so is lost by lapse of time.

JUDGMENTS (30)—MUNICIPAL CORPORATIONS (176)—DEFAULT JUDGMENTS—SUFFICIENCY OF COMPLAINT—WANT OF POWER TO CONTRACT—GENERAL LIABILITY. Default judgments against a city for negligence in failure to provide a fund for the payment of local assessments which were not a general indebtedness of the city are void where the complaints failed to state any facts to warrant the entry of any such judgment, but on the contrary showed that the plaintiffs were not entitled to the relief and were incapable of amendment.

MUNICIPAL CORPORATIONS (505) — WARRANTS — VALIDITY — VOID JUDGMENT. City warrants issued in payment of default judgments

which are void on account of insufficiency of the complaints to state
any cause of action are void.

JUDGMENT (195, 217)—RES JUDICATA—PERSONS AND MATTERS CON-
CLUDED. The judgment of a Federal court against a city determining
the validity of warrants issued by the city against its general in-
debtedness fund in part payment of certain judgments is not *res
adjudicata* in a subsequent similar action brought by other parties,
where the former action was not brought in behalf of others simi-
larly situated and the parties were not similarly situated; since the
parties in the subsequent action were not bound by the former judg-
ment and estoppels must be mutual.

DISMISSAL AND NONSUIT (5)—VOLUNTARY—RIGHT OF DEFENDANT
TO AFFIRMATIVE RELIEF. The plaintiff is not entitled to a voluntary
nonsuit, in an action to compel the levy of a tax for the payment of
warrants issued in payment of judgments against the city, where the
city had, by affirmative answer, pleaded the invalidity of the judg-
ment and warrants and prayed that they be declared fraudulent and
void.

MUNICIPAL CORPORATIONS (563)—TAXATION—COMPELLING CITY TO
LEVY TAX—RELIEF. In granting plaintiff relief in an action to com-
pel the levy of taxes to pay judgments recovered against the city,
the relief must consist of levying taxes annually under the provi-
sions of Rem. Comp. Stat., § 5635, which in no event shall be in
excess of taxes authorized by law.

Appeals from judgments of the superior court for
Jefferson county, Jurey, J., entered June 4, 1920, upon
findings in favor of the defendants, in actions to compel
the levy of taxes to pay certain indebtedness fund
warrants, tried to the court. Cause No. 16897, re-
versed; Cause No. 16898, modified; voluntary nonsuit
in cause 16899, reversed on defendants' cross-appeal.

*Charles E. Shepard* (*E. H. Guie,* of counsel), for
appellants.

*Jas. W. B. Scott* and *U. D. Gnagey,* for respondents.

PARKER, C. J. — The relators in these three cases
sought, in the superior court for Jefferson county, writs
of mandamus to compel the mayor and councilmen of
the city of Port Townsend to levy taxes upon the tax-

able property within that city in pursuance of the pro-
visions of chapter 84, Laws of 1897, p. 222 (Rem.
Comp. Stat., §§ 5635-5646), for the purpose of pay-
ing certain indebtedness fund warrants of the city held
and owned by relators, which warrants were issued in
satisfaction of certain judgments rendered against the
city by the superior court for that county. While the
cases were not formally consolidated in the superior
court for all purposes, they were all tried therein to-
gether by consent of all parties, some of the questions,
both of law and fact, being common to all. The trial
so had in the superior court resulted in findings and
judgment in each case denying to relators any relief
whatever, the judgments being rested upon the theory
that all of the judgments in payment of which the
warrants were issued were "fraudulent and void,"
and that therefore all warrants issued in payment
thereof were issued without consideration and do not
now evidence any legal obligation or indebtedness
against the city. From this disposition of the cases in
the superior court, the relators have appealed to this
court.

Port Townsend was incorporated as a city by a
special act of the territorial legislature in 1881. It
became a city of the third class in the year 1896, under
the general laws of the state enacted after its admis-
sion into the Union. The city has at all times since
then been and remained a city of the third class, having
less than ten thousand inhabitants. Being such a city,
it concededly possesses powers and has imposed upon
it duties as provided by chapter 84, p. 222, Laws of
1897, reading in part as follows:

"Section 1. In all municipal corporations, having
less than twenty thousand inhabitants, there shall be
maintained a fund to be designated as 'current expense
fund,' and, after the first day of February, 1898, a fund

to be designated as 'indebtedness fund.' " Rem. Comp. Stat., § 5635.

"Sec. 3.   Such municipal corporations shall levy and collect annually a property tax for the payment of current expenses, not exceeding ten mills on the dollar; a tax for the payment of indebtedness (if any indebtedness exists) not exceeding six mills on the dollar, and all moneys collected from the taxes levied for payment of current expenses shall be credited and applied by the treasurer to 'current expense fund;' and all moneys collected from the taxes levied for payment of indebtedness shall be credited and applied to a fund to be designated as 'indebtedness fund.' " [Rem. Code, §§ 5129 and 5131; P. C. §§ 956, 958.]

It is to compel the city authorities to make sufficient tax levies in pursuance of this law, from year to year, to the end that relators' warrants be paid, that these cases were commenced and are being prosecuted.   It is at once apparent that the principal questions to be here decided are as to the validity and binding force, as against the city, of the several judgments of the superior court for Jefferson county, in payment of which the warrants here in question were issued.

Prior to the year 1893, the city constructed several local street improvements, and in payment therefor issued warrants against local improvement funds to be raised by special assessments to be levied against the property benefited thereby.   The city failed to produce by special assessments sufficient funds to pay any of the warrants issued in payment of the improvements, which were held and owned by those who obtained the judgments here in question at the time of their rendition.   In October, 1893, the Bank of British Columbia, E. M. Johnson, the First National Bank of Port Townsend and Emil Heuschober, each being then the owner and holder of certain of the unpaid local improvement warrants, commenced separate actions

in the superior court for Jefferson county, being numbered 1258, 1259, 1260 and 1261, respectively, of the records of that court, seeking recovery of judgments against the city as general indebtedness of the city; each resting its or his claimed right of such recovery upon the ground that the city had negligently failed to produce from special assessments, contemplated to be levied to pay for the improvements and the warrants issued therefor, sufficient funds to pay any portion of such warrants then held and owned by each of those plaintiffs. The superior court sustained demurrers to the complaints in each of those actions, holding in effect that no cause of action was stated therein rendering the city liable as a general indebtedness. The plaintiffs in each of those actions electing not to plead further, judgment of dismissal was accordingly rendered against them, from which they appealed to this court. Those judgments were all thereafter, on February 11, 1897, reversed by this court and remanded to the superior court for further proceedings; this court holding that the complaints stated facts constituting causes of action against the city. *Bank of British Columbia v. Port Townsend,* 16 Wash. 450, 47 Pac. 896; *Johnson v. Port Townsend,* 16 Wash. 701, 47 Pac. 1103; *Heuschober v. Port Townsend,* 16 Wash. 701, 47 Pac. 1103; *First Nat. Bank of Port Townsend v. Port Townsend,* 16 Wash. 702, 47 Pac. 1103. Thereafter the city answered in each of those cases and they proceeded to trial upon the merits, resulting in judgments in each case against the city, as a general indebtedness of the city, in the several amounts prayed for; all of which judgments were rendered on February 1, 1898, and none of which were ever appealed from or in any manner set aside.

In May, June and July, 1895, the Merchants Bank of Port Townsend, the Commercial Bank of Port Town-

send, the Manchester Bank of New Hampshire, and Marcus A. Sawtelle, as receiver of the Port Townsend National Bank, each being the owner and holder of certain of the unpaid local improvement warrants, commenced actions in the superior court for Jefferson county, being numbered 1536, 1537, 1538 and 1539, respectively, of the records of that court, seeking recovery of judgments against the city as general indebtedness of the city, each resting its or his claimed right of such recovery upon the ground that the city had negligently failed to produce from special assessments, contemplated to be levied to pay for the improvements and the warrants issued therefor, sufficient funds to pay any portion of such warrants then held by each of those plaintiffs. The city answered in each of those cases and they thereafter proceeded to trial upon the merits, resulting in judgment in each case against the city, as a general indebtedness of the city, in the several amounts as prayed for; all of which judgments were rendered February 5, 1898, and none of which were ever appealed from or in any manner set aside; the judgment in the case commenced by Sawtelle as receiver being finally rendered in favor of John Barneson, who had become assignee of the receiver's rights while that case was pending, and he being substituted as plaintiff therein. These eight judgments, as we view them, all have the same standing as to their validity. They all rest upon causes of action which are in substance of the same nature. There are involved, in each of the three cases here on appeal, warrants issued in payment of one or more of these eight judgments.

We first inquire as to the validity of those eight judgments, in so far as their validity is challenged upon the ground of fraud in procuring their rendition.

10—120 WASH.

It is contended in behalf of the mayor and council
that they were all rendered in pursuance of an agree-
ment between the local improvement warrant holders
and the city authorities made in fraud of the rights
of the city and its general taxpayers, upon causes of
action which were not general obligations against the
city. All of these judgments were rendered after the
city had answered to the merits and after a trial upon
the merits, as appears by the record in each case; in
other words, upon the face of the records, the judg-
ments all appear valid in all respects. Touching the
question of the alleged agreement between those judg-
ment creditors and the city officials before the render-
ing of any of those judgments, we have the testimony
of Mr. Hastings as follows:

"Q. Do you remember whether or not during the
year 1898 and 1897 you occupied any official position
in the city of Port Townsend? A. About that time, I
do not remember exactly the year, but about that time
I became one of the councilmen. Q. Do you remember
the time when the matter of the suits on street grade
warrants came up before the council and were dis-
cussed by the council in open session and privately?
A. I do. . . . Q. Now, we have the time fixed
and you say you do remember the circumstance. Now, I
will ask you this question: Do you remember whether
there was any understanding between the mem-
bers of the city council individually, including your-
self and the persons that brought these suits on street
grade warrants? . . . A. I do. There was some
understanding. Q. What was that understanding?
. . . A. That this suit,—We would allow them to
take judgment on the suit and issue warrants for the
amount at a smaller rate of interest, on the Indebt-
edness Fund. As I remember it provided that the
city would go no further,—we would not appeal the
suit,—we would not appeal and they could take judg-
ment as it was, and go through the form, but the
trial would never come off, except that they take judg-

ment and we would issue warrants in lieu of the others. . . . Q. Do you remember, Mr. Hastings, who was the city attorney at that time? A. Mr. Plumley. Q. Do you remember whether or not you left the details of carrying out that idea to Mr. Plumley or not? A. I think we did; yes.''

We also have what may be regarded as the testimony, to the same effect in substance, of Mr. Hill, who was mayor of the city at the time of the rendering of these judgments. We have his testimony by virtue of a stipulation made between counsel upon the trial of the cases that he, if present, would testify in substance the same as Hastings testified. This testimony of Hastings and Hill does seem to refer to some agreement had before the rendering of the judgments; but assuming that it was so intended by them, their testimony seems to us not at all satisfactory as showing the making or carrying out of such an agreement in fraud of the city's rights. It was little else than the conclusion of the witnesses, rather than their statement of facts with that degree of clearness and precision called for to sustain a charge of fraud in the procuring of those judgments. Opposed to this we have the testimony of Mr. Felger, who was attorney for the plaintiffs in cases numbered 1258, 1259, 1260 and 1261, in part as follows:

''Q. Tell the facts, Mr. Felger, upon the subject raised by the defense. A. Each one of these cases was tried before the court. My recollection is that all eight of the cases that are mentioned, were brought at about the same time. Judge Sachs represented four of the plaintiffs, and I represented four, having associated with me the firm of Struve, Allen, Hughes & McMicken. The case known as the Bank of British Columbia against the City came up on demurrer, and was decided according to my recollection in favor of the city by the lower court. The case was appealed by the plaintiff, and the supreme court held that the

demurrer was not well taken, and that if the facts were as set forth in the complaint were true and could be proven, the plaintiff was entitled to recover. That decision of the supreme court having settled the law of the case, it was taken for granted that it settled the law of all of these cases, and, after proper notice, the cases were tried. . . . The records were all presented, the matter gone into thoroughly and carefully, and the judge, considering the facts and the law in the case, as was settled in the Bank of British Columbia case, decided the cases then and there in favor of the plaintiffs and against the city. . . . Q. What is the fact, Mr. Felger, as to any agreement or understanding or negotiation between the city and these creditors, or their attorneys, or any agents for them, previous to the trial of the cases. Was there or was there not any agreement or understanding between them that the city was to allow or consent to the taking of judgment? A. Absolutely no agreement with anybody. The matter was never discussed with any person excepting in the regular way before the attorneys, and with the attorneys as to the time of the trial of the case; and the case was contested by the city attorney, just the same as in any other case.''

We also have the testimony of Judge Sachs, who was attorney for the plaintiffs in cases numbered 1536, 1537, 1538 and 1539, in substance the same as that of Mr. Felger, in so far as it relates to the question of any agreement existing between any of those judgment creditors or their counsel and the city officials before the rendering of the judgments. This is the whole of the evidence in this record touching the question of the making of any agreement or of the having of any understanding between any of these judgment creditors or their counsel and the city officials prior to the rendering of any of the judgments in those cases. About a week after the rendering of those eight judgments, counsel for the judgment creditors did enter into negotiations with the members of the

city council looking to the payment of the judgments by the issuance of general fund warrants of the city, the result of which was that, on February 17, 1898, the city council passed a resolution authorizing the issuance of indebtedness fund warrants of the city bearing interest at the rate of six per cent per annum, in payment of all of those judgments, which was done and the judgments satisfied accordingly. Some of the judgments specified in terms that the amount awarded therein should draw interest at ten per cent per annum, and others were silent on that question. At the time of the rendering of those judgments, the legal rate of interest upon judgments in this state, in the absence of any express specification therein, was seven per cent per annum (Laws of 1895, p. 350); so that those judgment creditors waived interest upon all of their adjudged claims in excess of six per cent, and the city, by so voluntarily paying the judgments, of course, waived its right of appeal in each case. This compromise, if it may be so characterized, all occurred after the rights of those judgment creditors had become fully adjudicated by the judgments rendered in the manner above noticed. We are quite unable to see that what thus occurred after the rendering of the judgments lends any substantial support to the contention that the judgments were rendered by consent or in pursuance of any agreement made prior to their rendition. It seems clear to us that this agreed settlement and satisfaction of the eight judgments, after their rendition, is what the witnesses Hastings and Hill had in mind when they testified about an agreement and understanding arrived at between the judgment creditors and the councilmen. We think it is easy to see that Hastings and Hill were honestly mistaken as to the exact nature, and as to the time of making, of the agreement they had in mind. It is

worthy of note, in determining this question of fact, that the judgments in question were rendered more than ten years prior to the trial of these actions, wherein their testimony constitutes practically the whole of respondents' case looking to the setting aside of these judgments upon the ground of fraud in the procuring of their rendition. We are quite convinced that there has not been shown any agreement or understanding pursuant to which those eight judgments were rendered against the city in fraud of the rights of the city or its general taxpayers, and that they cannot be set aside or held for naught because of any such alleged fraud.

Contention is made in behalf of the mayor and council that the warrants issued in payment of those eight judgments are void as evidencing a general indebtedness of the city, because the resolution of the city council authorizing their issuance was passed at a meeting of the city council other than a regular meeting thereof. Arguing that the meeting of the council in question was other than a regular meeting, respondents invoke the statute relating to the meetings of city councils of cities of the third class, reading in part as follows:

". . . Provided, however, that no ordinance shall be passed, or contract let, or entered into, or bill for the payment of money allowed, at any special meeting. . . ." Rem. Comp. Stat., § 9123.

The answer to this contention is found in the statute which provides for the manner of enforcing money judgments against county and other public corporations. We there read:

"If judgment be given for the recovery of money or damages against such county or other public corporation, no execution shall issue thereon for the collec-

tion of such money or damages, but such judgment in such respect shall be satisfied as follows:

"1. The party in whose favor such judgment is given may, at any time thereafter, when execution might issue on a like judgment against a private person, present a certified transcript of the docket thereof to the officer of such county or other public corporation who is authorized to draw orders on the treasury thereof;

"2. On the presentation of such transcript, such officer shall draw an order on such treasurer for the amount of the judgment, in favor of the party for whom the same was given. Thereafter such order shall be presented for payment and paid with like effect and in like manner as other orders upon the treasurer of such county or other public corporation; . . ." Rem. Comp. Stat., § 953.

We think it plain from other portions of the statute relating to actions against public corporations, which we need not here notice, that the words "or other public corporation" include cities of the third class. Our conclusion upon this contention is, therefore, that the city council, in passing the resolution authorizing the issuance of the warrants in payment of the judgments, was not assuming to allow any "bill for the payment of money" other than what the judgment creditors could have enforced payment of without any action of the council whatever. The action of the city council in passing the resolution manifestly did cause the issuance of the warrants bearing a lower rate of interest than they otherwise would have borne; but that does not argue that the warrants were illegally issued as against the city. We think that the passing of the resolution and the accepting of the warrants by the judgment creditors had no other effect than to estop the judgment creditors from thereafter claiming a higher rate of interest from the city upon their judgment, and the warrants issued in payment thereof,

than the six per cent specified in the warrants; and a waiver of the city's right of appeal from those judgments. We conclude that the mere fact that the resolution was passed at what might be deemed a special meeting of the city council, and the issuance of the warrants in pursuance of such resolution, becomes of no consequence in our present inquiry, in view of the fact that such action on the part of the council and the judgment creditors resulted in the latter receiving less than they were in law entitled to and could have obtained by virtue of their judgment alone, without any action on the part of the city council.

Contention is made in behalf of the mayor and council rested upon the alleged fact that the local improvement warrants held by the plaintiff in the case of the Commercial Bank v. City, the failure to provide for the payment of which was the ground upon which the bank sought and was awarded recovery, were not delivered up and cancelled at the time of the trial and the rendering of the judgment in that case. It does seem from the evidence introduced in the cases here upon appeal that those particular local improvement warrants were not surrendered upon the rendering of the judgment in the Commercial Bank case, as the local improvement warrants were surrendered in the other seven cases. Now the Commercial Bank sought, and was awarded, recovery from the city, as a general indebtedness, of damages for the negligent failure on the part of the city to provide funds by special assessment to pay those warrants. It did not seek, and was not awarded, recovery upon the local improvement warrants as such. In other words, its action was, as were all of the other seven, in substance, an action for damages. Those local improvement warrants, like other city warrants, were not negotiable instruments in the sense that the city could not defend against them either in behalf of the local im-

provement district or in behalf of the city itself. It seems then that, if it has been established by a valid judgment, as we think it has been, that the Commercial Bank was, at the time of rendering the judgment in its case, the owner and holder of the local improvement warrants for the nonpayment of which it sought recovery of damages, the city can no longer suffer damages at the hands of any subsequent holder of those warrants. In that case the trial court made rather extended findings, and, among other things, found that the Commercial Bank "is now the owner and holder of" those warrants. The judgment rendered upon those findings was absolute and unconditional in form, being a plain money judgment. There was no statement of facts preserved in that case, there being no appeal from that judgment. We must now presume that the local improvement warrants were there introduced in evidence as a part of the bank's case, or, in any event, that there was evidence introduced warranting the court's finding that the Commercial Bank was then the owner and holder of those warrants. What has become of those warrants since that time seems to be now a matter of conjecture. We think, in view of their nonnegotiable nature, and the finding of the court in the Commercial Bank case that the bank was then the owner and holder of them, it is now of no consequence, so far as our present inquiry is concerned, what has become of them. We are of the opinion that the failure to have those local improvement warrants surrendered at the time of the rendering of that judgment does not render it subject to successful attack at the present time.

It is contended in behalf of the mayor and council that the relief now sought by relators as holders of the warrants should be denied because, at the time of the rendering of the judgments, the city was indebted be-

yond its constitutional debt limit, and also because the city was not then liable, as a general indebtedness, for its failure to produce funds by local assessments sufficient to pay the local improvement warrants held and owned by the plaintiffs in those actions. Plainly these were defenses which could have been made in those actions, presenting questions which we must now view as having been therein finally decided and adjudicated against the city. If the court decided them erroneously, that would not in the least render the judgments void or subject them to reversal or annulment, other than by appeals therefrom to this court. We have seen that those judgments were all rendered after appearance by the city in each case, after it had answered to the merits in each case, after trials upon the merits in each case, at which the city was present and represented by counsel, and that none of those judgments were ever appealed from or sought to be in any manner set aside or annulled, except as such attempt is being made in these actions, and, as we may further observe, was unsuccessfully made in a case in the Federal court, which need not at present be noticed. If those judgments had been rendered by default without any appearance whatever on the part of the city, and we could now say that the complaints upon which they were rendered wholly fail to state any causes of action against the city, we could probably in the present cases, as will presently be seen, hold them to be of no binding force or effect as against the city. But they do not rest upon any such frail foundation. They are judgments of a court of general jurisdiction which plainly had jurisdiction over the subject-matter which they purport to have adjudicated, and also over the person of the city by virtue of its general appearance, answers to the merits, and participation in the trials upon the merits. They have not been appealed from or set aside, and

must therefore now be regarded by us as of full force and effect, as their records import. *Sayward v. Thayer,* 9 Wash. 22, 36 Pac. 966, 38 Pac. 137; *State ex rel. Ledger Publishing Co. v. Gloyd,* 14 Wash. 5, 44 Pac. 103; *Isensee v. Austin,* 15 Wash. 352, 46 Pac. 394; *Boston Nat. Bank of Seattle v. Hammond,* 21 Wash. 158, 57 Pac. 365; *Olson v. Title Trust Co.,* 58 Wash. 599, 109 Pac. 49.

Contention is made in behalf of the mayor and council that the relief now sought by relators is barred by our three-year statute of limitations. It is argued that the relief prayed for by appellants is so barred because of the wrongful diversion by the city of moneys from this indebtedness fund to the prejudice of appellants more than three years before the commencement of these actions. The record does seem to show a wrongful diversion of some funds from the indebtedness fund by the city, but such diversion is, in any event, small in amount as compared with the total amount of the warrants against the indebtedness fund here in question remaining unpaid. If these were actions to recover damages from the city for such wrongful diversion of a local assessment fund against which the appellants held local assessment warrants, there might be some foundation for this contention; but this is not an action seeking recovery of damages from the city because of its wrongful diversion from a fund which it holds in effect in trust for the creditors of a local improvement district. Counsel's argument on this point has to do at most only with the diversion of a comparatively small sum from a fund raised by general taxation to pay general indebtedness of the city. These are actions to compel the city to levy taxes as required by law for the indebtedness fund, which is after all only one class of the city's general funds, to pay its general indebtedness. We think that the alleged wrongful di-

version by the city of moneys from such a general in-
debtedness fund did not, by lapse of time thereafter,
affect relators' right to the relief here sought. Attor-
neys for the mayor and council concede that "this
court has definitely decided that the statute of limita-
tions will not begin to run against a county or city war-
rant until after there is money in the treasury to pay
the same and the warrant holder has notice of such
fact." Contention is also made in this connection that
the relief prayed for by relators is barred by lapse of
time because of acts of the city authorities which it is
claimed amounted to a repudiation, or rather an asser-
tion of nonliability, of the city's obligation to pay any
of the warrants here in question, made and brought to
the knowledge of the warrant holders many years be-
fore the commencement of these actions. It may be
that such an assertion of nonliability might be so pro-
nounced and persisted in for a sufficient length of time
to bar warrant holders from relief at the hands of the
courts looking to their payment. We think it sufficient
to say that, however that may be, we have no such case
here. We conclude that the rights of relators here
sought to be enforced are not barred by lapse of time.

We now inquire as to the validity and binding force,
as against the city, of eight other judgments rendered
against it during the year 1898, after the rendering of
the judgments above mentioned, in payment of which
general indebtedness warrants were issued by the city
authorities, which warrants, with others issued in pay-
ment of the judgments above mentioned, are involved
in the Emerson and Weldrick cases here on appeal.
Some few years prior to 1893, the city constructed sev-
eral local improvements, and in payment thereof issued
warrants against local improvement funds to be raised
by special assessments to be levied against the prop-
erty benefited thereby. The city failed to produce by

special assessments sufficient funds to pay the costs of those improvements and of the warrants issued therefor, then held and owned by those who obtained these last mentioned eight judgments. During July, 1897, and April, May, June, July and August, 1898, the Franklin Savings Bank, N. D. Hill, R. Springer, Lee Baker, Merchants Bank, C. M. Sawtelle, J. C. Smith and Henry Landes commenced separate actions in the superior court for Jefferson county, being numbered 1775, 1819, 1823, 1825, 1844, 1849, 1851 and 1853, respectively, of the records of that court, seeking recovery of judgments against the city as general indebtedness, each resting its or his claimed right of such recovery upon the ground that the city had negligently failed to produce by special assessments, contemplated to be levied to pay for the improvements and the warrants issued therefor, sufficient funds to pay any portion of such warrants then held and owned by each of those plaintiffs. The city was duly served with summons in each of those cases. It filed a demurrer to the complaint in the Franklin Savings Bank case, but thereafter withdrew its demurrer and expressly consented in open court to the rendering of judgment against it as prayed for in the complaint; which judgment was accordingly rendered on April 9, 1898. The city failed to appear in any manner in all of the seven other cases, and judgment was rendered by default against the city in each of them as prayed for, in May, June, July, August and September, 1898.

All of those eight judgments having been rendered by consent or by default, we are warranted, as we shall presently show, in looking back of the judgments themselves to the allegations of the complaints upon which they were rendered, in testing their validity and binding force as against the city. We deem it sufficient to say that it appears by the allegations of those com-

plaints that the local improvement warrants for the payment of which the city was alleged to have failed to provide funds by special assessments were all issued in payment of local improvements to be paid for by special assessments against the property benefited thereby, and were not intended to be issued otherwise than as obligations against local improvement funds to be so raised. In other words, none of those warrants were issued, or authorized to be issued, as evidencing general obligations or indebtedness of the city. In none of those complaints was it alleged that the city had collected and misappropriated any local improvement funds to the prejudice of the rights of any of the holders of those local improvement warrants, the only claim being that the city had negligently failed to levy or collect local assessments sufficient to pay any of the local improvement warrants held by the plaintiffs in those cases, and that therefore it was liable in damages, as a general city indebtedness, measured by the several amounts due upon the plaintiffs' local improvement warrants. In some of the complaints in those actions it was alleged not only that the city had failed to levy and collect sufficient local improvement funds to pay any portion of the plaintiffs' local improvement warrants, but also that by reason of the lapse of time the city had lost its power to further levy or collect any such local improvement funds. Counsel for relators do not in their briefs differentiate those actions one from another in such manner that we feel called upon to do so here in testing the validity of the several judgments rendered therein.

Let us now inquire as to whether or not those complaints stated good causes of action as against the city, entitling the plaintiffs therein to recover as a general indebtedness of the city, assuming for the present that the correct answer to such inquiry will be controlling of

the question of the validity and binding force of the judgments rendered thereon. On July 9, 1897, this court rendered its decision in *German-American Savings Bank v. Spokane,* 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259, holding in substance that a city is not rendered liable, as a general indebtedness, for its failure to provide a local assessment fund to pay warrants issued in payment of a local improvement, in the absence of an express contract to become so liable. The question was exhaustively reviewed in that case in the light of a finding by the trial court, not only that the city had negligently failed to levy and collect the contemplated special assessments, but also that "the right to enforce collection of the special assessments was lost," evidently by lapse of time. In the course of the opinion, Chief Justice Scott, speaking for the court, said:

"From our investigation of the cases and text books, we are of the opinion that the decided weight of authority is against allowing a recovery of the city upon such matters at all, in the absence of an express lawful contract to that effect, or in cases where the money has been collected on the assessments and is in the city treasury. However, it is not necessary to go that far in this case, at least at this time."

The concluding words of this quotation suggest that the general statement preceding might be regarded in some measure as *obiter dictum*. But we think the reasoning upon which the decision of the case was rested shows that general statement of the law to be sound. Further language used in the opinion practically amounted to an invitation to counsel to ask a rehearing of the case, particularly touching the court's expressed view of the law by the use of the language above quoted. A petition for rehearing was thereafter filed, which was denied on September 15, 1897, thus evidencing the court's adherence to the view of the law

expressed in the above quoted language. On March 7, 1898, in *Wilson v. Aberdeen,* 19 Wash. 89, 52 Pac. 524, the same view of the law was adhered to under circumstances where the same expressed view of the law by the court cannot be said to have been in any sense *obiter dictum.* Having before it facts showing that the city had not only negligently failed to levy and collect special assessments, but also the fact that its right so to do had been lost by lapse of time, the court, in holding that the city was not thereby rendered liable as a general indebtedness, and referring to the *German-American Savings Bank* case as authority therefor, and again speaking through Chief Justice Scott, said:

"For the purposes of this case we adopt the concession that the remedy to prosecute the assessments is no longer available. But, notwithstanding this, we do not think the city should be held liable for the reasons set forth in the case referred to, although the question was not expressly decided in the opinion, it not being necessary. But the reasons for deciding against the plaintiff there apply with equal force against the plaintiffs here, although the special remedy is lost. The obligation rested upon the warrant holders to compel the officers of the city to proceed with the collection of the assessments, and, if they saw fit to allow their remedy to become lost through a failure to compel an enforcement of the assessment proceedings, they, and not the general taxpayers, must bear the consequences. They were bound to take notice of what was being done in the premises, or of any failure to proceed."

Now whatever may be said as to what may have seemed to be the unsettled condition of the law upon this question prior to the rendering of the decisions of this court in those two cases, it manifestly did, by those decisions, become the settled law of this state that a city would not be rendered liable as a general indebtedness for its failure for any cause to levy and collect

local assessments to pay purely local assessment obligations, even though the power to levy and collect such assessments be entirely lost by the lapse of time. And this, it will be noticed, so became the settled law of this state by the rendering of those two decisions—the first, nine months, and the second, one month, before the rendering of the first of the last eight judgments above mentioned. This court has repeatedly adhered to the law so settled by those two decisions. *Northwestern Lumber Co. v. Aberdeen,* 20 Wash. 102, 54 Pac. 935; *Northwestern Lumber Co. v. Aberdeen,* 22 Wash. 404, 60 Pac. 1115; *Potter v. Whatcom,* 25 Wash. 207, 65 Pac. 197; *State ex rel. Security Sav. Soc. v. Moss,* 44 Wash. 91, 86 Pac. 1129; *State ex rel. Barnes v. Blaine,* 44 Wash. 218, 87 Pac. 124; *State ex rel. American Freehold-Land Mtg. Co. v. Tanner,* 45 Wash. 348, 88 Pac. 321; *State ex rel. National Bank v. Tacoma,* 97 Wash. 190, 166 Pac. 66; *Pratt v. Seattle,* 111 Wash. 104, 189 Pac. 565.

In all of the five cases last cited, it was held, in substance, that a purely local improvement obligation would not even constitute a moral or legal consideration sufficient to support a voluntary agreement by a city to pay such an obligation from funds other than the special assessment fund. We see no escape from the conclusion that the complaints upon which these last mentioned eight judgments were rendered against the city by consent or by default did not state facts constituting causes of action entitling the plaintiffs to any recovery such as was attempted to be awarded thereby. Those were not complaints imperfectly stating causes of action which might have been made good by proper allegations. They were complaints in which the allegations affirmatively showed that the plaintiffs, under the then settled law, did not have, and could not have,

as against the city, any right of recovery of the nature awarded by the judgments rendered upon them.

We now inquire, Did such a complete failure to show grounds of recovery by the allegations of the complaints upon which these consent and default judgments were entered render the judgments void and of no binding force as against the city? We feel constrained to hold that such was the effect of those wholly defective complaints. It is elementary law that a default judgment cannot award any relief beyond that which the facts alleged in the complaint in the action show the plaintiff legally entitled to. This also means, of course, that if a complaint wholly fails to state facts legally entitling the plaintiff to any recovery, or states facts affirmatively showing that the plaintiff has no right of recovery, as those complaints did, a default judgment rendered thereon is void, just as such a default judgment would be void in so far as it awarded relief beyond that which the allegations of the complaint showed the plaintiff legally entitled to. In *State ex rel. Summerfield v. Tyler*, 14 Wash. 495, 45 Pac. 31, 53 Am. St. 878, 37 L. R. A. 207, there was drawn in question the validity of a judgment rendered by default against Spokane county upon a garnishment process. That was a mandamus proceeding in which it was sought to compel Tyler, as county auditor, to issue a county warrant in payment of a default garnishment judgment rendered against the county. The opinion does not expressly state that the judgment was one rendered by default, but it is plain that the reasoning of the court's opinion proceeds upon the theory that it was so rendered; and besides we find that the original record of that case in this court shows that the judgment there in question was rendered by default. Chief Justice Hoyt, speaking for the court, holding that the judgment was void be-

cause the county was not then subject to garnishment process, observed:

"It is familiar law that a judgment rendered in an action in which a court has jurisdiction of the person upon a complaint which does not state a cause of action is not void but simply erroneous, and it is upon this principle that the contention of the appellant, that the judgment in question is not void, is founded. But, in our opinion, if the county was not subject to garnishee process, the complaint in the action in which the judgment in question was rendered not only failed to state a cause of action, but affirmatively showed that no judgment could be rendered thereon against the county."

We think the first above quoted statement of the learned Chief Justice was not intended by him as applicable to other than complaints subject to demurrer in actions resulting in judgments other than by default. There may be room for arguing that, because the county was not subject to garnishment process at all at the time of the rendering of the judgment against it there in question, there was a complete want of jurisdiction in the court in that action over the subject-matter of the complaint. We apprehend, however, that if the county had entered its general appearance in the action and answered to the merits, and thereby necessarily invoked the jurisdiction of the court to decide the question of the county's liability to garnishment process, and a judgment against the county had followed, and no appeal had been taken therefrom by the county, the judgment would have become conclusive as against the county. This must be so because of the court's being one of general jurisdiction. The judgments which are the subjects of our present inquiry, as we have seen, were rendered upon alleged causes of action which in law did not exist as against the city any more than the cause of action forming the basis of the

garnishment judgment in the *Summerfield* case existed
as against the county. That decision may not be exact-
ly in point here, in view of the room for arguing that
there was involved therein more nearly a question of
jurisdiction over the subject-matter than in the case in
which the consent and default judgments here in ques-
tion were rendered; but we think it becomes very nearly
controlling in our present inquiry. It, in any event,
lends strong support to the view that the judgments
here in question are void. In *Krutz v. Batts,* 18 Wash.
460, 51 Pac. 1054, a case involving an attack upon a de-
fault judgment, Judge Dunbar, speaking for the court,
made this pertinent observation:

"Again, it is insisted that the complaint did not state
a cause of action sufficient to give the court jurisdiction.
A glance at the complaint is sufficient to refute this as-
sertion. We think it was a good complaint in every re-
spect and the usual complaint in cases of this kind.
However, there is a vast difference so far as jurisdic-
tion is concerned between a complaint which imperfect-
ly states a good cause of action, and which might be a
proper subject of a demurrer or motion, and a com-
plaint which states no cause of action at all, . . ."

This plainly is a recognition of the general rule that
"a complaint which states no cause of action at all"
will not support a default judgment rendered thereon.
The general rule is well stated in the text of 23 Cyc.
740, as follows:

"A default admits only what is well pleaded; and
consequently a judgment by default cannot be sustained
if plaintiff's declaration or complaint does not state a
good cause of action or lacks those averments which are
necessary to show his right to recover."

This view of the law finds support in a great many
decisions cited in the note. It is followed in the text
by this further observation: "The test proposed by
some of the decisions is that the declaration or com-

plaint must be sufficient to withstand a general demurrer.'' As intimated by the remarks of Judge Dunbar, above quoted from the *Krutz* case, we would probably not make the sufficiency of the complaint, as tested by demurrer, our controlling guide in all cases wherein the question of the validity of a default judgment is rested upon the allegation of the complaint in the action. But in our present inquiry we are not called upon to rest our conclusions upon such a test of the complaints in question; since, as we have seen, they affirmatively show that the plaintiffs were not legally entitled to recover in any sums as a general indebtedness of the city. It follows that all of these seven default judgments are void.

We might also well conclude that the consent judgment in favor of the Franklin Savings Bank is void for the same reason that we hold the default judgments to be void. However, the invalidity of the Franklin Savings Bank judgment is rendered plain, in the light of the facts attending its rendition, by our decision in *State ex rel. American Freehold-Land Mtg. Co. v. Tanner,* 45 Wash. 348, 88 Pac. 321, wherein it is held that a failure to produce a fund by local assessment to pay a purely local assessment obligation, even though the power of the city to produce such fund has become lost by the lapse of time, is not such a moral or legal consideration as will support a voluntary agreement by the city to pay such an obligation as a general indebtedness of the city, or a consent judgment rendered thereon. We conclude that all of the eight judgments last above mentioned are void and of no binding force as against the city; that the warrants issued in payment thereof are likewise void and do not constitute an indebtedness of the city for the payment of which general taxes may be levied.

There was introduced in evidence, on behalf of appellants, the record of the case of The First National Bank of Central City v. City of Port Townsend, from the Federal district court, in which case judgment was rendered in favor of the bank and against the city upon a number of warrants issued by the city against its indebtedness fund, which warrants had been issued in part payment of some of the superior court judgments above mentioned. The purpose of introducing the record of that case and the judgment rendered therein in the cases here on appeal was to lay the foundation for the contention that that judgment became *res judicata* against the city as to the validity of all of the sixteen superior court judgments above mentioned and the warrants issued in payment thereof against the city's indebtedness fund. As to the effect of that Federal court judgment upon the warrants issued against the indebtedness fund in payment of the first eight superior court judgments above mentioned, which are the only warrants in which the First National Bank of Central City is interested, we need not now inquire; since we have held upon other grounds that those eight judgments are valid and binding judgments against the city and are not subject to attack, as are the last mentioned eight consent and default judgments. As to the latter, we think the question of the Federal court judgment, introduced in evidence, being *res judicata* as against the city must be answered in the negative. That action was not brought in behalf of the plaintiff bank and others similarly situated; nor was the judgment therein so rendered; nor were either of the relators Emerson or Weldrick parties to that action; nor were any of the warrants for which they seek payment in their actions here upon appeal involved therein; nor were the then holders of their warrants here involved similarly situated, other than possibly in a limited de-

gree.  If Emerson and Weldrick would not have been
bound by the adjudication of the Federal court had the
judgment of that court been in favor of the city—and
manifestly they would not—it is plain that the city is
not now bound by that judgment as an adjudication
against it, in so far as we are here concerned with the
warrants which are here sought to be made the founda-
tion of the relief sought by Emerson and Weldrick.
The elementary rule that estoppels must be mutual to
be effective seems to be conclusive in favor of the city
on the question of this Federal court judgment being
*res judicata* against Emerson and Weldrick.  The rule
is well stated in the text of 23 Cyc. 1238, as follows:

"It is a rule that estoppels must be mutual; and
therefore a party will not be concluded, against his con-
tention, by a former judgment, unless he could have
used it as a protection, or as the foundation of a claim,
had the judgment been the other way; and conversely
no person can claim the benefit of a judgment as an
estoppel upon his adversary unless he would have been
prejudiced by a contrary decision of the case."

We are of the opinion that the judgment rendered in
the Federal court case is not *res judicata* as against the
city of any of the matters here drawn in question in the
Emerson and Weldrick cases.  To what extent it may
be so in the other case is of no moment here.

After the trial of these cases in the superior court,
but before their submission for final decision, Weldrick
asked for a judgment of voluntary nonsuit in his case
as to his indebtedness fund warrants numbered 166,
167, 172 and 173, which were issued by the city in pay-
ment of the Franklin Savings Bank judgment, that be-
ing the judgment that was rendered against the city by
consent.  Judgment of nonsuit was rendered accord-
ingly in favor of Weldrick as to those warrants, over
the objections of counsel for the mayor and councilmen.

This prevented the rendering of an affirmative final judgment against the validity of the Franklin Savings Bank judgment and those warrants issued in payment thereof. From this judgment of nonsuit, the mayor and council have appealed to this court. Relator Weldrick, by his complaint and application for mandamus, sought relief looking to the payment of those warrants, upon the same ground as he sought relief looking to the payment of his other indebtedness warrants involved in his case. The affirmative answer of the mayor and council plead the invalidity of the Franklin Savings Bank judgment and those warrants issued in payment thereof, as they plead the invalidity of the other superior court judgments and the warrants issued in payment thereof; and prayed "that all of the said indebtedness fund warrants mentioned and described in said application be declared fraudulent and void." We think this was the same in effect as if the city and its officers had commenced an action against Weldrick seeking an affirmative judgment decreeing the warrants issued in payment of the Franklin Savings Bank judgment to be void. In other words, in this state of the pleadings and this affirmative relief asked for by the mayor and the council in behalf of the city, they had a right to an affirmative judgment decreeing these Franklin Savings Bank judgment warrants to be void and constituting no obligation as an indebtedness against the city, as they were entitled to such a judgment with reference to indebtedness warrants issued in payment of the other seven superior court judgments. We conclude that the superior court erred in awarding to Weldrick the voluntary nonsuit.

We have given attention to the other questions presented in the briefs of counsel, but think the cases do not call for further discussion. It now remains for us to announce our final conclusions in the disposition of

these three cases. But, before doing so, we note that they were commenced several years ago, the judgments denying all relief being rendered on June 4, 1920. It now seems plain that whatever relief is to be granted any of the relators must of necessity consist of the levying of taxes in the future under the provisions of ch. 84, Laws of 1897, p. 222; § 5635 *et seq.*, Rem. Comp. Stat. We are of the opinion that any such relief should in no event call for the levying of taxes in excess annually, of the taxes authorized to be levied by that law.

*We conclude:*

First. The judgment rendered by the superior court in the case of State ex rel. First National Bank of Central City v. Mayor et al., being numbered 3084 of the records of the superior court and 16897 of the records of this court, must be reversed; since, as we have held, all of the indebtedness warrants involved in that case are valid indebtedness warrants of the city, issued in payment of the first above mentioned eight valid superior court judgments. It is so ordered. That case is remanded to the superior court with directions to enter its judgment and decree awarding to the relator First National Bank of Central City a writ of mandate requiring the mayor and council of the city of Port Townsend to levy a tax from year to year, in the future, to be paid into the city's indebtedness fund, in compliance with ch. 84, Laws of 1897, p. 222; § 5635 *et seq.*, Remington's Compiled Statutes, to the end that, as speedily as possible, that fund may be replenished to the full extent of the city authorities' tax-levying power under that law, as it may become necessary to exercise such power, and the funds so raised be applied from time to time, as raised, to the payment of those indebtedness warrants, together with all other valid indebtedness warrants payable from such indebt-

edness fund, in order as provided by law. Appellant First National Bank of Central City will recover its costs incurred in its appeal to this court.

Second. The judgment rendered by the superior court in the case of State ex rel. Emerson v. Mayor et al., being numbered 2960 of the records of the superior court and 16898 of the records of this court, must be reversed in so far as it denies relief to Emerson looking to the levying of a tax from year to year by the mayor and councilmen of the city of Port Townsend to pay in proper order the indebtedness fund warrants involved in that case which were issued in part payment of any of the first above mentioned eight valid superior court judgments. It is so ordered. That case is remanded to the superior court with directions to enter its judgment and decree awarding such relief to the relator Emerson by a writ of mandate of the same import and nature as above directed by us in our disposition of the First National Bank of Central City case. Appellant Emerson will recover his costs incurred in his appeal to this court.

Third. The judgment rendered by the superior court in the case of State ex rel. Weldrick v. Mayor et al., being numbered 2961 of the records of the superior court and 16899 of the records of this court, must be reversed in so far as it denies relief to Weldrick looking to the levying of a tax from year to year by the mayor and councilmen of the city of Port Townsend to pay in proper order the indebtedness fund warrants involved in that case which were issued in part payment of any of the first above mentioned eight valid superior court judgments. It is so ordered. That case is remanded to the superior court with directions to enter its judgment and decree awarding such relief to the relator Weldrick by a writ of mandate of the same import and nature as above directed by us in our dis-

position of the First National Bank of Central City case.

Fourth. The judgment of voluntary nonsuit rendered in favor of Weldrick by the superior court in the case of State ex rel. Weldrick v. Mayor et al., being numbered 2961 of the records of the superior court and 16899 of the records of this court, must also be reversed. It is so ordered. That case is remanded to the superior court with further directions to enter its judgment and decree adjudging and decreeing the indebtedness fund warrants, numbered 166, 167, 172 and 173, issued in payment of the Franklin Savings Bank superior court judgment, to be void and of no effect as evidencing an indebtedness of the city, as it was so adjudged and decreed with reference to the other indebtedness warrants issued in payment of the seven default superior court judgments. Neither party will recover costs incurred in their respective appeals to this court in the case of State ex rel. Weldrick v. Mayor et al., since the parties upon both sides have in a measure been successful in their respective appeals.

MITCHELL, MAIN, MACKINTOSH, HOLCOMB, TOLMAN, and HOVEY, JJ., concur.

BRIDGES, J. (concurring)—I am in accord with what is said by the Chief Justice concerning those judgments which were rendered after the trial. I concur in the result reached by the foregoing opinion with reference to the eight judgments which were taken by default. I prefer, however, to hold those judgments void because of legal fraud practiced by the city officials, rather than because, as stated in the opinion, the complaints not only failed to state causes of action, but affirmatively showed that they could not be amended to state causes of action. The main opinion clearly shows that, because of the previous decisions of this court, the city

officials must have known, and, as a matter of law, did know, that the city was not liable on the facts pleaded, or on any facts which could be pleaded in those actions. Under such circumstances, the city authorities, representing as they did the taxpayers of the city, had no right or power to willingly permit a judgment to be entered. It was in substance so held in the cases of *State ex rel. American Freehold-Land Mtg. Co. v. Tanner,* 45 Wash. 348, 88 Pac. 321, and *State ex rel. Bradway v. De Mattos,* 88 Wash. 35, 152 Pac. 721. It is true that in the *De Mattos* case the judgment was taken with the express consent of the city officials, and in the *Tanner* case the city agreed in advance that the judgment might be taken by default, while here, according to the showing made, the city simply defaulted. But there is as much legal fraud on the part of the city officials in deliberately allowing judgment by default as by express agreement—each amounts to a consent judgment. I think the two cases last cited are decisive of the question under discussion.

I am also of the opinion that, in so far as the default judgments are concerned, the result of the deliberations of this court must have been the same whether the complaints stated or failed to state causes of action. *State ex rel. Bradway v. De Mattos, supra.*

FULLERTON, J., concurs with BRIDGES, J.