[No. 34061. Department One. May 2, 1957.]

WILLIAM H. HARKINS, *Respondent*, v. FRANK DEL POZZI *et al.,*
*Appellants.*[1]

[1]Reported in 310 P. (2d) 532.

*Ostrander, Van Eaton & Hepfer,* for appellants.

*Leo W. Stewart,* for respondent.

OTT, J.—This is an action to quiet title. It presents but a single primary question: Where is the proper boundary line between second-class tidelands owned by one person and the adjacent uplands owned by another?

The cause was tried to the court. It determined the line of ordinary high tide as of the year 1910, and that it was relatively unchanged at the present time; that there was insufficient substantial or reliable evidence to establish the line of ordinary high tide to have been further landward at any earlier date; and that the owner of the second-class tidelands had acquired title to the disputed upland area between the line of ordinary high tide and the meander line by adverse possession.

From a judgment quieting title to the disputed uplands in the owner of the second-class tidelands, the owners of the adjacent uplands have appealed.

The appellants' title was acquired through predecessors in interest and originated with a patent issued by the United States government in 1873. Some of the intervening deeds of conveyance and a county tax foreclosure were defective

in various respects and, in 1949, the appellants Del Pozzi (alleging, *inter alia,* adverse possession) brought an action to quiet title to real property described as follows:

"Beginning at the meander corner to Sections 15 and 22 Township 29 North, Range 2 East of the Willamette Meridian, with a variation of 23°30′ East; thence North 9° East 20.25 feet to the true place of beginning; thence North 89° East 472.13 feet; thence North 32°5′ East 218.5 feet; thence North 67°38′ West 90 feet; thence North 19°5′ East 153 feet; thence North 43°25′ West 173.4 feet; thence North 42°9′ West 303.94 feet; thence North 46°37′ West 148.1 feet; thence North 32°55′ West 240 feet; thence North 29°29′ West 320 feet; thence West 177 feet; thence on the meander line South 32° East 455 feet; thence South 16° East 544.5 feet; thence South 9° West 395.55 feet to the true place of beginning, EXCEPT a strip 70 feet wide off of the North end, from county road to meander line."

The decree, entered May 17, 1949, quieted title in appellants Del Pozzi as against all persons specifically made parties to the proceedings and their unknown heirs, and all other persons claiming any right, title or interest in the real estate described therein. The respondent was not made a party to this proceeding.

The respondent's title to the second-class tidelands originated in 1930 by a deed to his predecessor from the state of Washington, which conveyance contained the following description:

"All tide lands of the second class, owned by the State of Washington, situate in front of, adjacent to or abutting upon the north half in width of lot 3, except the north 70 feet of said lot, section 15, township 29 north, range 2 east, W. M., with a frontage of 9.97 lineal chains, more or less."

The appellants claim ownership beyond the meander line and to the line of ordinary high tide, for the reason that the line of ordinary high tide is most seaward, and that, hence, the meander line is not the true seaward boundary of the uplands. *Rue v. Oregon & Washington R. Co.,* 109 Wash. 436, 186 Pac. 1074 (1920); *Harper v. Holston,* 119 Wash. 436, 205 Pac. 1062 (1922); *Harris v. Swart Mortgage Co.,* 41 Wn. (2d) 354, 249 P. (2d) 403 (1952).

In approaching this problem, we must first determine where the evidence established the mean or ordinary high tide line was located. With reference to the location of the line of ordinary high tide, the court entered the following finding of fact:

"That the line of ordinary high water, salt water, or line of mean high tide as the same ebbed and flowed in Mutiny Bay in North Half of Government Lot 3, in Section 15, Township 29 North, Range 2, E. W. M. Island County, Washington, at the time of statehood and until 1910 is impossible to determine in relation to the sandspit that is located some distance westerly of the United States Government Adjusted Meander Line as hereinabove described, but from 1910 until 1934, and again from 1934 until 1956, the mean high tide line in North Half of Government Lot 3, was located along the westerly boundary of the sandspit, as more particularly shown in Defendant's Exhibit 35."

No error is assigned to this finding and, hence, for the purposes of this action, the line of ordinary high tide is as established by exhibit No. 35. *Judd v. Bernard,* 49 Wn. (2d) 619, 304 P. (2d) 1046 (1956). The line of ordinary high tide is that line which the water impresses on the soil by covering it for sufficient periods to deprive the soil of vegetation and destroy its value for agricultural purposes. *Driesbach v. Lynch,* 71 Idaho 501, 234 P. (2d) 446 (1951).

RCW 79.04.060 [cf. Rem. Rev. Stat., § 7797-6] defines second-class tidelands as follows:

"Whenever used in this title the term 'second class tidelands' means public lands belonging to the state over which the tide ebbs and flows outside of and more than two miles from the corporate limits of any city, from the line of ordinary high tide to the line of extreme low tide."

At the time of statehood, the state of Washington acquired from the Federal government the ownership of the beds and shores of all navigable waters in the state, up to and including the *line of ordinary high tide in waters where the tide ebbs and flows.* Art. XVII, § 1, state constitution.

The conveyance from the state of Washington of

second-class tidelands adjacent to government lot 3 to respondent's predecessor conveyed only the title which the state had, namely, to the line of ordinary high tide. Hence, in order for respondent in this case to assert any interest in the uplands in question, he must rely upon his claim of adverse possession.

The court determined that adverse possession had been established under RCW 7.28.050, 7.28.070, 7.28.080 [cf. Rem. Rev. Stat., §§ 786, 788, 789]. In this particular, the court found:

"And the plaintiff [respondent] and his predecessors in interest have been in actual, open and notorious possession of all of said land as herein described under claim and color of title made in good faith, and for more than seven successive years remained in possession, and have a connected title in law and equity deducible of record from the State of Washington, and has paid all taxes legally assessed against said lands by the County Assessor and plaintiff is now the legal owner and entitled to immediate possession thereof, and have the easterly boundary of his land established as the United States Government Adjusted Meander line as set forth in paragraph 1 hereof."

 The appellants contend that this finding was not supported by the evidence. We are in accord with appellants' contention. The trial court, in its memorandum opinion, discussed the evidence relating to adverse possession, upon which this finding was based. The court was of the opinion that, although the respondent's tidelands deed of 1930 conveyed no record title to any of the uplands west of the line of ordinary high water, it did convey a paper title to such uplands as far east as the government adjusted meander line.

By statute, the measurement of the length of second-class tidelands is in lineal chains along the meander line. RCW 79.16.330 [cf. Rem. Rev. Stat., § 7797-120]. The fact that the statute requires this measurement to be made along the meander line does not establish that line as a boundary between the second-class tidelands and the adjacent uplands. The boundary lines of second-class tidelands are, by statute, the line of extreme low tide and the line of ordinary

high tide. RCW 79.04.060, *supra.* All area landward of the line of ordinary high tide is uplands. The 1930 deed which conveyed only second-class tidelands did not give respondent paper title to the adjacent upland area. Hence, the court's finding that respondent had color of title to the disputed upland area is not supported by the evidence.

Were respondent's acts of disseizin sufficient to satisfy the statute and establish a right by adverse possession, as found by the trial court?

■ The first act of disseizin was by respondent's predecessor, who built a boathouse and walkway on the property in 1932. This was removed in 1934. The act was one of disseizin; however, it fell far short of continuing for the period of time required by RCW 7.28.070, *supra.*

Second, during the years 1934 to 1949, the respondent and his predecessor used the area for occasional picnics. We have held that such use is not such an adverse use as to evidence a hostile claim, nor was it sufficiently continuous in this case to establish a right. See *Smith v. Chambers*, 112 Wash. 600, 192 Pac. 891 (1920); *Bowden-Gazzam Co. v. Kent*, 22 Wn. (2d) 41, 154 P. (2d) 292 (1944).

Third, the evidence established that respondent and his predecessor posted a sign on this area warning of the danger of beach fires. Although permission to erect the sign was not sought, the sign contained nothing to indicate that it was placed there by the owner of the second-class tidelands, or that respondent was asserting dominion over the area where the sign was located.

The acts of disseizin, as evidenced by the record, were insufficient to satisfy the statute relative to adverse possession.

Does the evidence sustain the finding that the owner of the tidelands was paying taxes on the uplands?

■ The respondent's tax receipts described "Tidelands in front of lot 3." Such a statement in the tax receipts indicates that the assessment was upon tidelands only, and that the tax based upon the assessment was paid upon such lands. Nor does the testimony of the assessor indicate that, in making his assessment of the value of the second-class

tidelands, he included this upland area between the line of ordinary high tide and the meander line. Hence, the evidence does not sustain the court's finding that respondent paid taxes upon these uplands. We conclude that the respondent did not sustain his claim of title to the uplands by adverse possession.

Was there sufficient evidence to sustain appellants' cross-complaint that title be quieted in them as against the respondent?

The appellants' chain of title up to Anderson described the seaward boundary line as the meander line. Such a description is sufficient to include the disputed upland area. The meander line, when located landward of the line of ordinary high tide, has been held not to be the true boundary line. In such cases, the true boundary line is the line of ordinary high tide. *Rue v. Oregon & Washington R. Co., supra; Harper v. Holston, supra; Harris v. Swart Mortgage Co., supra.*

Anderson was not divested of title to the north half of government lot 3 by the tax foreclosure of 1902. He or his heirs were divested of the north half of government lot 3 only as far seaward as the meander line by the quiet-title action of 1949, for the reason that the quiet-title action was an action *in rem,* and the court could confirm no greater interest than was actually prayed for in the complaint. See *State ex rel. First Nat. Bank of Central City, Colo. v. Hastings,* 120 Wash. 283, 207 Pac. 23 (1922), and *State ex rel. Adams v. Superior Court,* 36 Wn. (2d) 868, 220 P. (2d) 1081 (1950).

Commencing with the Marshall deed to Beaughan in 1908, and from Beaughan to Lambier in 1912, and from Lambier to Robinson in 1919, and from Robinson to Del Pozzi in 1931, and from Del Pozzi by contract to Thelen in 1949, the description contained in the deeds included the north half of government lot 3 to the meander line. Those deeds, although they described property which was not included in the county tax foreclosure of 1902, nevertheless conferred a paper title to the uplands to the line of ordinary high tide, for the reason that an invalid deed will

support color of title. *Hamilton v. Witner,* 50 Wash. 689, 97 Pac. 1084 (1908); *Lara v. Sandell,* 52 Wash. 53, 100 Pac. 166 (1909); *Schlossmacher v. Beacon Place Co.,* 52 Wash. 588, 100 Pac. 1013 (1909); *Miller & Sons v. Simmons,* 67 Wash. 294, 121 Pac. 462 (1912).

■ Hence, Del Pozzi and Thelen have paper title to the uplands to the line of ordinary high tide, by virtue of recorded deeds extending back for approximately fifty years. As between the appellants and the respondent, the appellants have color of title to the disputed area by virtue of their ownership of the uplands, while the respondent has no color of title to any lands other than the second-class tidelands.

Further, the tax receipts of the appellants show that they paid the taxes on the uplands of the north half of government lot 3, while the respondent's heretofore-discussed tax receipts show that he paid taxes on the tidelands, but none on uplands.

This proceeding being one *in rem,* in which the ownership of the uplands in question is specifically put in issue as between the parties to this action, only the rights of the parties to this proceeding can be determined. The title can be quieted only as to them. The appellants having color of title, their title is superior to the claim of the respondent, who has no title whatsoever except a claim of adverse possession, which claim, we hold, did not satisfy the statutes with reference to adverse possession.

■ Finally, respondent contends that the 1949 action to quiet title was void as to him for the reason that he was not made a party defendant in that proceeding.

This contention is without merit for two reasons: (1) The disputed area was not included within the specific description in the complaint, and (2), since he was claiming title only to tidelands, he was not a necessary or proper party in an action where only the title to uplands was being adjudicated.

For the reasons stated, the judgment of the trial court is reversed. The cause is remanded with instructions to enter

a judgment quieting title in the appellants to the disputed upland area.

HILL, C. J., MALLERY, FINLEY, and WEAVER, JJ., concur.

June 27, 1957. Petition for rehearing denied.

